UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STUART DIZAK,

        Plaintiff,

  -against-            9:15-cv-1171 (LEK/TWD)

B. HAWKS, *et al.*,

        Defendants.

**DECISION and ORDER**

**I. INTRODUCTION**

*Pro se* Plaintiff Stuart Dizak ("Plaintiff") commenced this civil rights action asserting claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1 ("Complaint"). In a Decision and Order filed on December 10, 2015, the Court granted Plaintiff's Application to proceed *in forma pauperis* and reviewed the sufficiency of the Complaint in accordance with 28 U.S.C. §§ 1915(e) and 1915A. Dkt. No. 7 ("December Order"). On the basis of that review, the Court ordered Defendants Corrections Officer ("C.O.") B. Hawks ("Hawks"), C.O. D. Lavallee ("Lavallee") and C.O. G. Gibilaro ("Gibilaro") to respond to Plaintiff's Eighth Amendment excessive force claims and failure to intervene claims. Id. at 23. The Court also ordered Hawks to respond to Plaintiff's retaliation claims based upon the use of excessive force and the preparation of a false misbehavior report. Id. The Court dismissed the following claims: (1) verbal harassment; (2) First Amendment right to practice religion; (3) retaliation claims based upon Hawks' refusal to allow Plaintiff to attend religious services; (4) Fourteenth Amendment claims against Defendant Hearing Officer Eric Gutwein ("Gutwein"); and (5) supervisory claims against Defendant Superintendent Philip Heath

("Heath"). Id. In light of his *pro se* status, Plaintiff was afforded an opportunity to submit an amended complaint. Id. Presently before the Court is Plaintiff's Amended Complaint.[1] Dkt. No. 11 ("Amended Complaint").

## II. LEGAL STANDARD

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. §1915A(b) was discussed at length in the December Order and it will not be restated in this Decision and Order. See Dec. Order at 1-4. The Court will construe the allegations in Plaintiff's Amended Complaint with the utmost leniency. See, e.g., Haines v. Kerner, 404 U.S. 519, 521 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers").

## III. SUMMARY OF THE AMENDED COMPLAINT[2]

Plaintiff's Amended Complaint reiterates the factual allegations in the original Complaint. The Amended Complaint includes two new Defendants: C.O. D. Rogers ("Rogers") and DOCCS. Am. Compl. at 1. The Amended Complaint also contains claims against Heath and Gutwein, Defendants who were previously dismissed from the action.[3] The Amended Complaint does not

---

[1] The Amended Complaint is not dated or executed. While the Court did not explicitly provide a date for the filing of an amended complaint, the Amended Complaint was filed on January 27, 2016 and thus, the Court deems the Amended Complaint timely filed.

[2] Plaintiff annexed Exhibits to the Amended Complaint. Dkt. Nos. 11-1 ("Exhibits"); 11-2 ("Cover Letter"). To the extent that the Exhibits are relevant to the incidents described in the Amended Complaint, the Court will consider the Amended Complaint as well as any documents attached as exhibits. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (stating that a complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

[3] Heath is not listed on the caption or in the list of parties in the Amended Complaint, but the Amended Complaint contains factual allegations and claims against Heath.

2

include any cause of action against Gibilaro as Plaintiff withdraws his claims against Gibilaro. See id. at 2. The Clerk of the Court is directed to amend the docket accordingly.

On December 11, 2012, at approximately 4:25 p.m., Plaintiff was en route to see Rabbi Gulock.[4] Id. at 2-3. Plaintiff intended to give Rabbi Gulock a letter that Plaintiff previously sent, several weeks prior, to Heath. Id. at 3. In the letter, Plaintiff complained that Hawks verbally harassed Plaintiff. Id. The Superintendent did not respond to Plaintiff's letter. Id. Rabbi Gulock told Plaintiff to bring her the letter and indicated that she would convey the letter to the Superintendent to "informally resolve the matter." Id.

Before Plaintiff arrived at Rabbi Gulock's office, Lavallee told Plaintiff to return to Hawks' post. Id. When Plaintiff returned, Hawks asked Plaintiff for the letter. Id. Plaintiff refused and told Hawks that the letter was about Hawks and therefore, Plaintiff would only relinquish the letter to a sergeant. Id. Plaintiff was handcuffed and Hawks told Plaintiff to get against the wall. Id. Plaintiff complied and Hawks attempted to rip the letter from Plaintiff's hand. Id. Hawks slammed Plaintiff against the wall, knocked Plaintiff to the ground, and Hawks and Lavallee kicked Plaintiff in his face and body while Plaintiff was handcuffed. Id. Rogers was present and did not intervene.[5] Id. Plaintiff did not resist or threaten the officers. Id. at 4.

After the assault, Rogers dragged Plaintiff through a mud puddle while Plaintiff was still in handcuffs. Id. Plaintiff sustained lacerations to his face, scalp, arms, legs, torso, and head. Id. Plaintiff was treated at the prison infirmary and then escorted to Gibilaro's office. Id. Hawks was

---

[4] Rabbi Gulock is not a defendant herein.

[5] Plaintiff believes that Rogers kicked and struck Plaintiff while he was handcuffed in a mud puddle. Am. Compl. at 3.

3

in Gibilaro's office and was reading Plaintiff's letter to Heath. Id. Gibilaro asked Plaintiff to sign a document stating that he was not attacked. Id. Plaintiff refused and instead wrote a statement claiming that Hawks and Lavallee attacked Plaintiff. Id. As a result, Plaintiff was taken to the Special Housing Unit ("SHU"). Id.

On December 12, 2012, Plaintiff was served with a misbehavior report, prepared by Hawks, that charged Plaintiff with violent conduct, refusing a direct order, and refusing a search/frisk. Id. at 5. On December 14, 2012, Plaintiff's disciplinary hearing commenced. Id.; Exs. at 1. Plaintiff asked Gutwein, the hearing officer, to call the following individuals as witnesses at his disciplinary hearing: Heath, Rabbi Gulock, and any inmates residing in C1 or D1 who were in a position to hear or observe the incident on December 11, 2012. Am. Compl. at 5. The hearing was adjourned for an investigation based upon Plaintiff's request for witnesses. Id.

On December 24, 2012, Plaintiff filed a grievance ("Grievance # 7716") against Hawks. Id. On January 2 and January 3, 2013, Plaintiff received confirmation that Grievance # 7716 was filed. Exs. at 3-4. On those two days, Plaintiff was subjected to three cell searches. Am. Compl. at 6.

On January 3, 2013, Plaintiff's Tier III disciplinary hearing resumed with Gutwein presiding. Id.; Exs. Plaintiff was advised that the witnesses he requested were "irrelevant" and would not be permitted to testify. Am. Compl. at 6. At the conclusion of the hearing, Plaintiff received a written disposition from Gutwein that stated that Plaintiff was found guilty based upon the misbehavior report. Id. at 5. Plaintiff was sentenced to six months in SHU with a loss of packages, commissary, phone privileges, and good time. Id. On January 7, 2013, Heath reduced Plaintiff's penalty from six to four months. Id. at 8. Plaintiff was confined to SHU from December 11, 2012 until April 4, 2013 (114 days). Id.

On January 16, 2013, Plaintiff received notification from Heath that Grievance # 7718-12, asserting staff misconduct during a December 2012 disciplinary hearing, was denied. Id. at 6; Exs. at 6. Plaintiff did not file a grievance with that corresponding number. Am. Compl. at 6. Plaintiff complained to Ms. Menendez ("Menendez"),[6] the grievance supervisor, that Grievance # 7718 never existed. Id. at 7. Menendez refused to provide Plaintiff with a copy of Grievance # 7718, told Plaintiff that the number was correct, and refused to process Plaintiff's appeal to the Central Office Review Committee ("CORC"). Id.

Plaintiff attempted, unsuccessfully, to appeal directly to CORC. Id. On February 21, 2013, Karen Bellamy ("Bellamy")[7] forwarded a letter to Plaintiff advising that Plaintiff was "inadvertently sent a notification of receipt for GNE-7716-12, which alleged threats by staff. You were subsequently advised that the correct number of the grievance was GNE-7718-12, which was answered by the Superintendent on January 16, 2013 and not appealed." Exs. at 8.

The Amended Complaint contains the following claims: (1) Eighth Amendment excessive force claims against Hawks, Lavallee, and Rogers; (2) an Eighth Amendment failure-to-intervene claim against Rogers; (3) a Fourteenth Amendment due process claim against Gutwein; (4) a claim that Gutwein violated DOCCS Directive § 251-5.1; (5) retaliation claims based upon cell searches, the use of excessive force, and false misbehavior reports; (6) First Amendment religion claims; (7) supervisory claims against Heath; (8) and conspiracy claims. See generally Am. Compl.

## IV. ANALYSIS

### A. Eleventh Amendment

---

[6] Menendez is not a named defendant herein.

[7] Bellamy is not a named defendant herein.

5

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. CONST. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); Hans v. Louisiana, 134 U.S. 1, 10-21 (1890); Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. Gollomp v. Spitzer, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, see Quern v. Jordan, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in Plaintiff's Complaint. See generally Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38-40 (2d Cir. 1977); Dawkins v. New York, No. 93-CV-1298, 1996 WL 156764, at *2 (N.D.N.Y. Mar. 28, 1996). Actions for damages against a state official in his or her official capacity are essentially actions against the state. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

Here, Plaintiff's claims against DOCCS are dismissed as Plaintiff seeks relief from defendants immune from suit under § 1983. See LeGrand v. Evan, 702 F.2d 415, 417 (2d Cir. 1983); Meehan v. Kenville, 555 F. App'x 116 (2d Cir. 2014); Simmons v. Gowanda Corr. Facility, No. 13-CV-0647, 2013 WL 3340646, at *2 (W.D.N.Y. July 1, 2013) ("[T]he New York State Department of Corrections . . . 'enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself.'" (quoting Posr. v. Court Officer Shield No. 207, 180 F.3d

6

409, 411 (2d Cir. 1999))); Levy v. Cohen, 439 F. App'x 30, 32 (2d Cir. 2011) (stating that a state and its agencies are immune from suit).

### B. Eighth Amendment Claims Against Rogers

The law related to the Eighth Amendment was discussed in the December Order and will not be restated herein. See Dec. Order at 7-10. In the December Order, the Court held that Plaintiff's claims against Gibilaro for excessive force and failure-to-intervene survived sua sponte review and required a response. In the Amended Complaint, Plaintiff withdraws all references to "Gibilaro" and replaces any reference to "Gibilaro" with "Rogers." See Am. Compl. at 2. Mindful of the Second Circuit's direction that a *pro se* plaintiff's pleadings must be liberally construed, see, e.g., Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that Plaintiff's Eighth Amendment claims against Rogers survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### C. Fourteenth Amendment Claims

In the December Order, the Court dismissed Plaintiff's Fourteenth Amendment claims against Gutwein holding:

> Here, Plaintiff claims he was sentenced to the SHU for six months but fails to allege any facts related to how long he was actually confined in the SHU. See Compl. at 5. Thus, the Complaint does not plausibly suggest that Plaintiff was deprived of a liberty interest. See Mingo v. Fischer, No. 14-CV-0235, 2014 WL 2918599, at *5 (N.D.N.Y. June 26, 2014) ("While plaintiff was sentenced to SHU confinement, he does not indicate the length of his sentence, which is a critical component of the Fourteenth Amendment due process inquiry."). Moreover, the Complaint lacks any description of the conditions Plaintiff endured while serving a SHU sentence. Without any allegations regarding how long he was confined to the SHU or how the conditions of Plaintiff's SHU confinement differed in

7

> any way from normal SHU conditions, Plaintiff has failed to plead any
> facts that plausibly suggest that his confinement in SHU imposed an
> atypical and significant hardship, and therefore Plaintiff has failed to plead
> the existence of a valid liberty interest. See Palmer, 364 F.3d at 65.[8]

Dec. Order at 16.

In the Amended Complaint, Plaintiff claims that he was confined to the SHU for 114 days. Am. Compl. at 8. However, the Amended Complaint is void of any allegations related to the conditions that Plaintiff endured while in the SHU. As discussed in the December Order, "the Second Circuit generally takes the position that confinement in a SHU, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under normal conditions." Dec. Order at 15-16 (footnote omitted) (citing Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004); Colon v. Howard, 215 F.3d 227, 231-32 (2d Cir. 2000)). Accordingly, Plaintiff has failed to plead a liberty interest.

In the Amended Complaint, Plaintiff also attempts to assert new claims that his due process rights were violated because the hearing was not completed on time in accordance with 7 N.Y.C.R.R. § 251-5.[9] See Am. Compl. at 6. A violation of the seven-day rule set forth in 7 N.Y.C.R.R. § 251-5.1, without more, is not enough to establish a federal constitutional claim. Soto

---

[8] The Court also held that in order for Plaintiff to proceed with his claims against Gutwein arising out of disciplinary proceedings held in December 2012, he must first submit a "Peralta Waiver" in which he waives all claims relating to disciplinary sanctions affecting the duration of his confinement (i.e., the recommended loss of good time) in order to proceed with claims challenging sanctions affecting the conditions of his confinement. See Dec. Order at 17-19.

[9] The regulation states that a hearing must be commenced as soon as is reasonably practicable following the inmate's initial confinement pending said hearing. See Hernandez v. Tiede, No. 94-CV-908, 1996 WL 863453, at *6 (W.D.N.Y. May 29, 1996) (citing 7 N.Y.C.R.R. § 251-5.1).

v. Walker, 44 F.3d 169, 173 (2d Cir. 1995); see also Bolanos v. Coughlin, No. 91 CIV. 5330, 1993 WL 762112, at *14 (S.D.N.Y. Oct. 15, 1993) (stating that an inmate does not have a federally created right to have his disciplinary hearing commenced within a certain time); see also Barnes v. Henderson, 628 F. Supp. 2d 407, 413 (W.D.N.Y. 2009) (collecting cases) (stating that the failure to provide a speedy hearing under the state regulation is not enough to establish a federal due process violation). Here, Plaintiff merely alleges that his hearing was delayed but does not allege that the delay was unreasonable or that the delay resulted in a constitutional violation. Cf. Soto, 44 F.3d at 172 (noting that the inmate claimed he had not had an opportunity to review the basis for his transfer to administrative segregation and that he was denied the chance to address the substance of the misbehavior report).

For the reasons set forth herein and in the December Order, Plaintiff's Fourteenth Amendment due process claims against Gutwein are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim.

**D. First Amendment Religious Claims**

The law relating to First Amendment religious claims was discussed in the December Order and will not be restated herein. See Dec. Order at 10-11. The Court dismissed Plaintiff's claims with the following reasoning:

> Here, the Complaint lacks any facts establishing that Plaintiff's religious beliefs were "sincerely held" or that his beliefs were "substantially burdened." Indeed, the Complaint contains nothing more than vague accusations that Plaintiff could not practice his religion without dates, times, or facts establishing how he was burdened. The allegations, without more, fail to plausibly suggest that Hawks, or any other Defendant, burdened Plaintiff's right to freely practice his religion.

Dec. Order at 11.

Despite the fact that Plaintiff was afforded the opportunity to amend his Complaint, the Amended Complaint does not cure the deficiencies in the original Complaint related to this claim. For the reasons set forth herein and in the December Order, Plaintiff's First Amendment religious claims are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) for failure to state a claim.

### E. First Amendment Retaliation Claims

The law relating to First Amendment retaliation claims was discussed in the December Order and will not be restated herein. See Dec. Order at 11-12. In the Amended Complaint, Plaintiff asserts a new retaliation claim based upon cell searches. See Am. Compl. at 6. The Supreme Court has ruled that inmates have no constitutional protection from cell searches, even those conducted for retaliatory reasons. See Hudson v. Palmer, 468 U.S. 517, 530 (1984) ("[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."); see also Walker v. Keyser, No. 98 Civ. 5217, 2001 WL 1160588, at *9 (S.D.N.Y. Oct. 17, 2001) ("Even retaliatory searches are not actionable under § 1983."). Also fatal to Plaintiff's claim is the failure to allege who was responsible or personally involved in the alleged searches. As discussed in the December Order, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, Plaintiff's retaliation claims related to cell searches are dismissed for failure to state a claim.

### F. Supervisory Claims Against Heath

The law related to supervisory liability was discussed in the December Order and will not be restated herein. See Dec. Order at 19-20. In the December Order, the Court dismissed Plaintiff's

10

claims against Heath holding:

> [T]he Court finds that Plaintiff has failed to establish that Heath was personally involved in any constitutional deprivation. Plaintiff does not suggest that Heath was present during any incident described in the Complaint. Plaintiff refers generally to letters that he sent to Heath but fails to plead facts establishing where the letters were sent or by what means they were forwarded. Without more, the allegations are not enough to allege personal involvement by Heath in any constitutional deprivation.

Id. at 20.

Here, Plaintiff claims that he reported to Heath that he was verbally assaulted and harassed by Hawks. See Am. Compl. at 8. Specifically, Plaintiff claimed that Hawks stated, "Jews are no good, they are all thieves" and every time Plaintiff attended religious services, Hawks would make a derogatory remark. Id. The Amended Complaint lacks facts related to when and how Plaintiff reported these complaints to Heath. The Amended Complaint does not cure the deficiencies noted in the original Complaint with respect to the claims against Heath. For the reasons set forth in the December Order, Plaintiff's claims against Heath are subject to dismissal for failure to plead personal involvement or supervisory liability.

### G. Conspiracy

Construing the Amended Complaint liberally, Plaintiff asserts conspiracy claims against all Defendants related to a "cover up" involving Grievances 7716 and 7718. See Cover Letter. A conspiracy claim under § 1983 must allege that: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on the plaintiff and (2) an overt act was committed in furtherance of that goal. Ciambriello v. Cty. of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002). Vague and conclusory allegations that Defendants have engaged in a conspiracy must be dismissed. Id. at 325; see also Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint

11

containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); Brown v. City of Oneonta, 106 F.3d 1125, 1133 (2d Cir. 1997); Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003) (stating that in order to maintain a conspiracy claim, a plaintiff "must provide some factual basis supporting a meeting of the minds"). "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.'" Flores v. Levy, No. 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sept. 23, 2008) (quoting Twombly, 550 U.S. at 554). Plaintiff's conspiracy allegations are wholly conclusory. See Cover Letter. Accordingly, Plaintiff's conspiracy claims against Defendants are dismissed for failure to state a claim.

### H. Previous Claims

After reviewing the original Complaint, the Court held that Plaintiff's Eighth Amendment claims against Hawks and Lavallee survived sua sponte review and required a response. The Court also held that Plaintiff's retaliation claims against Hawks, based upon the use of excessive force and the issuance of the misbehavior report, required a response. Those claims are repeated and realleged in the Amended Complaint and thus, survive this review as well.

### I. Unsigned Amended Complaint

All pleadings must be signed by the party if the party is not represented by an attorney. FED. R. CIV. P. 11(a). Plaintiff's Amended Complaint is unsigned. Therefore, Plaintiff will be permitted **thirty (30) days** from the filing date of this Decision and Order to submit a completed and signed certificate, using the certificate form included with this Decision and Order, certifying that Plaintiff's signature on the certificate shall serve as an original signature on his Amended Complaint

12

for purposes of the Local Rules and Rule 11 of the Federal Rules of Civil Procedure.

**V.     CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Amended Complaint (Dkt. No. 11) is accepted for filing; it is further

**ORDERED**, that the following claims are **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eleventh Amendment claims against DOCCS; (2) Fourteenth Amendment due process claims against Gutwein; (3) First Amendment freedom of religion claims against Hawks; (4) retaliation claims based upon cell searches; (5) supervisory claims against Heath; and (6) conspiracy claims; and it is further

**ORDERED**, that Gibilaro, Gutwein, and Heath are **DISMISSED** as Defendants herein; and it is further

**ORDERED**, that upon receipt from Plaintiff of the signed certificate verifying that Plaintiff's signature on the certificate shall serve as an original signature on his Amended Complaint, the Clerk is directed to: (1) file the Amended Complaint in this action together with the supporting Exhibits (Dkt. No. 11-1) as the operative pleading; (2) revise the docket to reflect that Rogers is a Defendant and to remove Gibilaro as a Defendant; and (3) issue an amended summons and forward it to the U.S. Marshal for service on the additional Defendant; and it is further

**ORDERED**, that a response to the Amended Complaint be filed by Defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Decision and Order on

Plaintiff in accordance with the Local Rules together with the certificate and a copy of Plaintiff's Amended Complaint.

**IT IS SO ORDERED.**

DATED: February 17, 2016
Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge