UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STUART DIZAK,

                                        Plaintiff,

                                                            9:15-CV-1171
v.                                                          (LEK/TWD)

B. HAWKS, *et al.*,

                                        Defendants.

_____


APPEARANCES:                              OF COUNSEL:

STUART DIZAK
09-B-3893
Plaintiff pro se
Five Points Correctional Facility
Caller Box 119
Romulus, New York 14541


HON. ERIC T. SCHNEIDERMAN              KATIE E. VALDER, ESQ.
Attorney General for the State of New York    GREGORY J. RODRIGUEZ, ESQ.
Counsel for Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### ORDER AND REPORT AND RECOMMENDATION

## I.    INTRODUCTION

*Pro se* Plaintiff Stuart Dizak has commenced this civil rights action under 42 U.S.C.

§ 1983, alleging claims for excessive force in violation of his rights under the Eighth

Amendment against Greene Correctional Facility ("Greene") Correctional Officers ("CO") B.

Hawks and D. Lavalee, and Greene Sergeant D. Rogers; failure to intervene in violation of the

Eighth Amendment against Rogers; and retaliation in violation of his rights under the First Amendment against Hawks. (*See generally* Dkt. No. 18.)

Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that Plaintiff has failed to exhaust his administrative remedies with regard to all of his claims. (Dkt. Nos. 111.) Plaintiff has opposed the motion. (Dkt. No. 141.) For reasons explained below, the Court recommends that Defendants' motion for summary judgment on failure to exhaust grounds be granted in part and denied in part.

## II.    FACTUAL BACKGROUND

### A.    December 11, 2012, Use of Force Incident and Plaintiff's Injuries

On December 11, 2012, Plaintiff was housed in Greene. (Dkt. No. 18 at ¶ 2.[1]) At approximately 4:25pm, while Plaintiff was on his way to the chapel to give the Rabbi a letter to give to the Superintendent regarding harassment by Hawks, Hawks directed Lavalee to bring Plaintiff back to his post. *Id.* at ¶¶ 9-10; Dkt. No. 64-1 at 15.[2] According to Plaintiff, Hawks told Plaintiff to give him the letter, and Plaintiff responded he would only turn the letter over to a sergeant because it was a complaint letter regarding Hawks. (Dkt. No. 18 at ¶¶ 10-11.) Hawks told Plaintiff, who was handcuffed, to get against the wall and tried to rip the letter from Plaintiff's hands. *Id.* at ¶ 12. Plaintiff claims Hawks then slammed him against the wall, knocked him to the floor, and began kicking him in the face and body while he was lying in a

---

[1] Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs.

[2] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

mud puddle.  (Dkt. Nos. 18 at ¶¶13-14; Dkt. No. 111-1 at 14-15.)  Plaintiff contends Rogers

failed to intervene and believes Rogers participated by striking him while he was lying on the

floor.  (Dkt. No. 18 at ¶ 15.)

Plaintiff claims to have sustained lacerations to his face, scalp, arms, legs, torso, and

head.  *Id*. at ¶ 16.  On December 11, 2012, following the incident with Hawks, Plaintiff was

given a security exam in the infirmary by Max Jacobs, RN.  (Dkt. No. 111-1at 18.)  According to

a January 10, 2013, memorandum to the Grievance Committee from Mary Reed RN, Plaintiff

was examined in his boxer shorts and noted to have left forehead swelling, right elbow swelling

with a small laceration below the elbow, and multiple abrasions on his right knee.  *Id*.  Plaintiff

was examined in the infirmary again the following day and complained of right knee, right

elbow, and right leg pain, and he was found to have two black and blue eyes.  *Id*.

In a December 24, 2012, memorandum from Hawks to the Deputy Director, Hawks

indicated he had been involved in a use of force with Plaintiff as described in a use of force

report referenced by him.  (Dkt. No. 111-2 at 22.)  In the memorandum, Hawks denied punching

or kicking Plaintiff.  *Id*.

### B.    Inmate Misbehavior Report and Disciplinary Hearing

Hawks issued an Inmate Misbehavior Report ("IMR") related to the December 11, 2012,

incident charging Plaintiff with 104.11 violent conduct, 107.10 interference with employee,

106.15 refusing a direct order, and 115.10 refusing a search or frisk.  (Dkt. No. 64-1 at 8.)

Plaintiff plead not guilty to all charges.  *Id*. at 9.

According to Lisa Ellis, DOCCS Office Assistant I in the Greene Disciplinary Office,

Plaintiff's disciplinary hearing was commenced on December 14, 2012, and concluded on

January 3, 2013.  (Dkt. No. 64-1 at ¶ 4.)  Plaintiff claims that the hearing was started on

December 14, 2012, and ended abruptly without adjournment because Plaintiff had requested

additional witnesses and so that a thorough investigation could be conducted.  (Dkt. No. 18 at ¶

24.)  Defendants have produced a transcript solely of the January 3, 2013, proceedings.  (Dkt.

No. 64-1.)  A search conducted by Ellis located no audiotapes of Plaintiff's disciplinary hearing,

and Ellis's personal records revealed nothing regarding the hearing.  *Id*. at ¶¶ 7, 9.  The hearing

officer found Plaintiff guilty of 107.10 interference with employee, 106.15 refusing a direct

order, and 115.10 refusing a search or frisk, and imposed a penalty of six months in the Special

Housing Unit ("SHU") with a corresponding six month loss of packages, commissary, phones,

and good time.  (Dkt. Nos. 18-2 at 1; 64-1 at 20-21.)  The Superintendent subsequently reduced

the penalty period from six to four months.  (Dkt. No. 18 at ¶ 35.)

### C.    Plaintiff's Grievance No. GNE - 7718-2, Incorrectly Identified by the Inmate Grievance Office as Grievance No. GNE - 7716-2 in Communications with Plaintiff

On or about December 31, 2012, Plaintiff's grievance arising out of the December 11,

2012, incident was filed in the Inmate Grievance Program ("IGP") office at Greene.  (Dkt. No.

111-1 at 14-15.)  In the grievance, Plaintiff described the interference with his attempt to deliver

a letter to the Rabbi regarding harassment by Hawks and the claimed excessive force by Hawks.

*Id*.  According to the grievance, Plaintiff was questioned and asked to sign a statement before

being taken to the infirmary, and prior to being moved to SHU.  *Id*. at 15.  Plaintiff was told the

reason for the beating was that he had been trying to deliver the letter.  *Id*.  Plaintiff claimed in

the grievance that Hawks had issued the IMR to justify his use of force on Plaintiff.  *Id*.  Plaintiff

also noted in the grievance that he had written to the Superintendent on October 26, 2012,

4

indicating he was "worried this might happen to me." (Dkt. No. 111-1 at 15.) There is no mention of either Lavallee or Rogers in the grievance, nor does the grievance describe excessive force by anyone other than Hawks. The December 24, 2012, cover page to the grievance, sent to the grievance office on December 26, 2012, requested that a copy of Plaintiff's October 26, 2012, letter to the Superintendent, referenced in his grievance, and pictures of his injuries be attached to and made a part of the grievance. (Dkt. No. 111-2 at 10-11.)

On January 2, 2013, the Inmate Grievance Resolution Committee ("IGRC") sent Plaintiff a memorandum regarding the grievance stating "you don't have to write to us everyday your Grievance was already put in your no# is GNE#7716-12." *Id*. at 9. In a December 31, 2012, Interdepartmental Communication from the IGRC to the Greene Superintendent attaching Plaintiff's grievance for review, the grievance was again identified as Grievance No. GNE - 7716-12. (Dkt. No. 111-1 at 9.) In a December 31, 2012, notice to Plaintiff from the IGP Supervisor, Plaintiff was informed that Grievance No. GNE - 7716-12 had been filed and sent automatically to the Superintendent for review because it was a "Staff Conduct" grievance. (Dkt. No. 18-2 at 3.)

The grievance was identified as GNE - 7718-12, not GNE - 7716-12, in the Superintendent's denial issued on January 16, 2013. (Dkt. No. 111-2 at ¶ 16 and p. 12.) According to Greene IGP Supervisor, Thomas A. Mauro, GNE - 7716-12 had been erroneously written on the documents sent to Plaintiff regarding his grievance filed on December 31, 2012, and the correct number of the grievance was GNE - 7718-12. *Id*. at ¶ 14. Mauro contends that while the Superintendent's January 16, 2013, determination was labeled GNE - 7718-12, rather than GNE - 7716-12 as Plaintiff had expected, the body of the decision clearly referenced

Plaintiff's complaint as well as an interview that had taken place with Sergeant Ropeter on

December 14, 2012. (Dkt. No. 111-1 at ¶ 17.)

Plaintiff has submitted a letter he claims to have sent to the Superintendent the same day

he received the denial regarding "Non-existent grievance, GNE 7718-12." Plaintiff wrote:

> This afternoon I received a notice of denial from you for a
> grievance I supposedly made on December 14, 2012, GNE 7718-
> 12. I made no such grievance. The only grievance I made was
> filed on 12-31-12 against CO Hawks for attacking me. That
> number was GNE 7716-12.
>
>                                         *   *   *
>
> I certainly hope 7718 is not being confused with 7716, the bonafide
> grievance. I would appreciate a response.

*Id*. at 30. According to Mauro, the grievance office never received Plaintiff's letter to the

Superintendent. (Dkt. No. 111-2 at ¶ 22.) Defendants have submitted nothing regarding whether

the Superintendent himself received or responded to the letter.

Plaintiff's March 4, 2013, letter to Karen Bellamy, Director of the DOCCS IGP, states he

was interviewed by IG Inspector Russo on the morning of January 16, 2013. (Dkt. No. 114-2 at

26.) Plaintiff has submitted a January 17, 2013, letter from him to IG Investigator Russo in

which he wrote:

> Later with my mail I received notice of denial of a grievance I
> never filed, 7718-2 apparently dated 12/14 [illegible] of the first
> hearing.
>
>                                         *   *   *
>
> The morning after the denial of the non-existent grievance once
> again, I happened to notice how close the two numbers are. First,
> the actual grievance that was filed on 12/31/12, 7716-12, the non-
> existing grievance dated 12/14 was 7718-12, only two numbers
> apart. Moreover why does 7718-12/14 come before 7716-12/3?
> Or did someone err when they came up with 7718-12 intending for
> it to be 7716? Either way, if you read the denial of 7718, it makes
> no sense, especially be refering (sic) to "new" injuries. By doing

6

> so, they are acknowledging the "old" injuries.  Furthermore, I never
> received an acknowledgment of a grievance no. 7718-12.

(Dkt. No. 114-2 at 36.)

Plaintiff has also submitted a February 7, 2013, document entitled "Notice of Decision to

Appeal," Grievance No. GNE - 7716-12, in which it is written:

> I have not received a response from the Superintendent within the
> twenty five day period from the filing date of December 31, 2012.
> I did receive a response to a 7718-12 grievance that I never filed.
> There was very little resemblance to the actual grievance other than
> the completion date of December 14, 2012.  The Superintendent
> was noticed of such on January 16, 2013.
>
> 7716-12 concerned an officer Hawks.  The non-existent grievance
> 7718, that I never filed, concerned S Block-Staff.  I did inform
> Superintendent Heath on January 16, 2013, that I never filed a
> grievance or had a problem with S-Block staff.  (emphasis in
> original)

(Dkt. No. 114-2 at 21.)

A handwritten initialed note under the foregoing states:

> Inmate informed 2/11/13 that grievance # was 7718-12. (#7716
> was assigned to another case & was placed on his documents in
> error)
> * Grievance dealt with was staff misconduct and Supt response
> was done after investigation revealed that he said he was never
> assaulted by any staff @ Facility (12/14/12).  Medical stated
> injuries were consistent [with] use of force.  (Grievant claimed he
> had 2 black eyes) etc.).

*Id.*  A February 12, 2013, routing slip from Bellamy to herself regarding preparation of a

response as to the status of Grievance No. GNE - 7716-12, has a handwritten notation "need

status of GNE 7716-12.  Says hasn't received response from Supt."  (Dkt. No. 114-2 at 30.)

Mauro has stated in his declaration:

> A review of Grievance GNE - 7718-12 reveals no indication that
> plaintiff appealed or wished to appeal the Superintendent's January
> 16, 2013, decision to the Central Office Review Committee
> ("CORC"), other than Plaintiff's February 7, 2013, letter, which
> appears to have been denied as untimely in accordance with
> Directive 4040.

(Dkt. No. 111-2 at ¶ 20.)  Mauro's statement appears to presume Plaintiff was aware the

determination was issued on the grievance he knew as GNE - 7716-12.

In her February 21, 2013, letter to Plaintiff, Bellamy wrote "[c]ontact with the facility

administration reveals that you were inadvertently sent a notification of receipt for GNE-7716-

12, which alleged threats by staff.  You were subsequently advised that the correct number of the

grievance was GNE - 7718-12, which was answered by the Superintendent on January 16, 2013,

and not appealed."  (Dkt. No. 111-1 at 29.)  Bellamy's letter said nothing about the fact that

Plaintiff had not been advised of the correct number until after the time to appeal the

Superintendent's determination had passed.  *Id.*  Bellamy denied Plaintiff's request for a copy of

Grievance No. GNE - 7718-12 on the grounds there was no provision for giving it to him in

DOCCS Directive 4040, and she advised him he could seek copies of grievance documents via

FOIL.  *Id.*

Plaintiff responded to Bellamy's February 21, 2013, letter in his March 4, 2013, letter

referenced above.  (Dkt. No. 114-2 at 26-27.)  Plaintiff wrote in part "Please allow me to inquire

as to how I could have ever responded to Grievance 7718 in a timely basis (7 days) when at no

time prior to Grievance supervisor, Ms Melendez's visit to me in the SHU on February 11, 2013,

long after the fact, and informed me that GNE 7716 was in error (sic)."  *Id*. at 26.  Plaintiff also

wrote:

> Your letter dated February 21, 2013, was again, the first time GNE 7718 was referred to other than the superintendent's notice of January 16, 2013. Noteworthy it had very little to do with my actual grievance. In your letter of February 21, 2013, you stated that Directive 4040 makes no provision for an inmate to refer a grievance directly to Central Office. However, my letter was not a grievance, it was an appeal the grievance office refused to forward to you, again stating that I had not rersponded (sic) in a timely basis to GNE 7718."

(Dkt. No. 114-2 at 26.)

Plaintiff alleges that when Melendez told him about the numbering error in his grievance on February 11, 2013, he requested that she forward his appeal to CORC, and she refused, telling Plaintiff it was too late to appeal. (Dkt. No. 111-2 at 36.) Plaintiff claims Melendez also denied his request for a copy of Grievance No. GNE - 7718-12, which Plaintiff had believed to be non-existent. (Dkt. No. 18 at ¶ 33.)

Plaintiff has also submitted a document addressed "TO CONCERNED PARTIES," dated February 13, 2013, regarding "Response to Grievance Committee Refusal to forward GNE 7716 to CORC," which references his February 7, 2013, notice of intent to appeal to CORC. (Dkt. No. 114-2 at 21, 24.) It is unclear to whom, if anyone, Plaintiff sent the document.

**D.    Plaintiff's Grievance No. GNE - 7765-13**

On March 6, 2013, Plaintiff filed Grievance No. GNE - 7765-13, complaining that he had not been advised of the error in the numbering of Grievance No. GNE - 7718-12 until February 11, 2013. (Dkt. No. 111-2 at 35.) In the grievance, submitted in the form of a letter to Melendez regarding Grievance Nos. GNE - 7716 and 7718, Plaintiff acknowledged Melendez had told him on February 11, 2013, that grievance number GNE - 7716-12 had been placed on communications to him in error, and GEN - 7718-12 was the correct number on the grievance

filed on December 31, 2012.  (Dkt. No. 111-2 at 36.)  Plaintiff also noted in the letter Bellamy

had written to him on February 21, 2013, confirming the error.  *Id;* Dkt. No. 111-1 at 29.

Plaintiff wrote in the grievance:

> The problem with the above is that I was not informed that 7716
> was in error until your visit on 2/11/13, long after the fact.  There
> was no way on 1/16/13, the date I received a response to a
> grievance no. 7718 that 7716 was in error.  Further, there was very
> little similarity between the two grievances.  Be that as it may, if
> grievance 7716 was in error, then why did all subsequent
> correspondence from both the Superintendent's office as well as
> your office, refer to 7716?  Rather odd, don't you think?  At no
> time did I ever receive a written correction stating that #7716 was
> in error, either before or after 1/16/13 which by chance was also
> the date of IG Investigator Russo's favorable visit to me.  Without
> any such notice there was no way I could have known that 7718
> was the intended number.

(Dkt. No. 111-2 at 36.)

The IGRC denied Grievance No. GNE - 7765-13 on March 8, 2013, writing:

> The I.G.R.C. has examined all available evidence for grievance
> #GNE-7765-13, and the following information represents a
> synopsis of the evidence we considered in this case:
> The grievant is requesting that Superintendent's decision for GNE
> - 7718-12 be reversed and sent to CORC for review.
>
> Superintendent Philip Heath responded to GNE - 7718-12 on
> 1/16/13 and grievant did not appeal his decision.  Per Directive
> #4040 701.6(g) (1) (I) (b), your request to submit an appeal to
> CORC is over forty-five (45) days late and is hereby denied.

*Id*. at 32.  According to Mauro, Plaintiff did not appeal Grievance No. GNE - 7765-13 to the

Superintendent.  *Id*. at ¶ 27.

## III.    APPLICABLE SUMMARY JUDGMENT LEGAL STANDARDS

Summary judgment may be granted only if the submissions of the parties taken together

"show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

In *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005), the Second Circuit reminded that on summary judgment motions "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." "To defeat summary judgment, . . . nonmoving parties may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys*, 426 F.3d at 554 (citation and internal quotation marks omitted). "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id*. (citation and internal quotation marks omitted). "[T]o satisfy Rule 56(e), affidavits

must be based upon 'concrete particulars,' not conclusory allegations.  "*Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997)  (citation omitted).  "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).  Where a party is proceeding pro se, the court is obliged to "read [the pro se party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  However, "a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 (WHP) (JCF), 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999)[3] (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## IV.    PLAINTIFF'S FAILURE TO COMPLY WITH L.R. 7.1(a)(3)

While courts are required to give due deference to a plaintiff's *pro se* status, that status "does not relieve [a pro se] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003). While Plaintiff has responded to Defendants' statement of material facts, he has failed to do so in the manner required under L.R.  7.1(a)(3) in that he has neglected to respond to all of the statements and to include specific citations to the record where the factual issue arises in his

---

[3]  Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

response to some of the statements.[4]  (*See* Dkt. No. 141-2 at 15-16.)

Where a party has failed to respond to the movant's statement of material facts in the

manner required under L.R. 7.1(a)(3), the facts in the movant's statement will be accepted as true

(1) to the extent they are supported by evidence in the record,[5] and (2) the nonmovant, if

proceeding *pro se*, has been specifically advised of the possible consequences of failing to

respond to the motion.[6]  *See Champion, v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

This Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the

court to conduct a search and independent review of the record to find proof of a factual dispute

where a non-movant willfully fails to respond to a properly filed summary judgment motion.

*Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002).  However, the Second

Circuit has ruled that "[a] district court has broad discretion to determine whether to overlook a

party's failure to comply with local court rules," including local rules relating to requirements

regarding the submission of and response to statements of material facts on summary judgment

---

[4]  L.R. 7.1(a)(3) requires the opposing party to file a response to the movant's statement of material facts.  Under the rule, the response "shall mirror the movant's statement of material facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises."

[5]  L.R. 7.1(a)(3) provides that "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." However, *see Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d. Cir. 2004) ("[I]n determining whether the moving party has met his burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts in the moving party's [Statement of Material Facts].  It must be satisfied that the citation to evidence in the record supports the assertion.") (citations omitted).

[6]  Defendants included the requisite notification of the consequences of failing to respond to a summary judgment motion with their notice of motion.  (Dkt. No. 111.)

motions, and to "conduct an assiduous review of the record." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citation and internal quotation marks omitted). In deference to Plaintiff's *pro se* status, and consideration of the obvious effort Plaintiff has put into responding to Defendants' statement of material facts, the Court has opted to review the entire summary judgment record in this case.

## V.    LEGAL STANDARD FOR THE EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants seek summary judgment on Plaintiff's excessive force and retaliation claims on the grounds that he failed to exhaust his administrative remedies under the DOCCS IGP by: (1) failing to identify Lavallee and Rogers in Grievance No. GNE - 7718-12, or include facts giving notice of their involvement in the incident on December 11, 2012; (2) failing to include facts giving notice of his retaliation claim against Hawks in the grievance; and (3) failing to fully exhaust the grievance as required under the DOCCS IGP. (*See generally* Dkt. No. 111-4.)

### A.    Legal Standard for Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, __ U.S. ___, 136 S. Ct. 1850, 1854-55 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in

14

court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly") (internal quotations omitted). In New York State prisons, DOCCS has a well-established three-step IGP. N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 7, § 701.5.

First, an inmate must file a complaint with the facility IGP clerk within twenty-one days of the alleged occurrence. *Id*. § 701.5(a)(1). A representative of the facility's IGRC has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id*. § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id*. § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id*. § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the facility superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the Central Office Review Committee ("CORC") for a decision under the process applicable to the third step. *Id*. § 701.5(c)(3)(I).

Third, a grievant may appeal to CORC within seven working days of receipt of the

15

superintendent's written decision. *Id*. § 701.5(d)(1)(I).  CORC is to render a written decision within thirty calendar days of receipt of the appeal.  *Id*. § 701.5(d)(3)(ii).

Special procedures are used when, as in this case, the grievance involves a claim of staff misconduct.  *Id*. § 701.8.  A grievance alleging staff misconduct, once it is given a number and recorded, must be sent directly to the superintendent, and the superintendent must issue a decision within twenty-five days.  *Id*. § 701.8(f).  If the grievant wishes to appeal a decision by the Superintendent to CORC, he must file a notice of decision to appeal with the inmate grievance clerk at the bottom of the Superintendent's decision within seven days of receipt of the decision.  *Id*. § 701.8(h).  CORC is required to render a written decision within thirty calendar days of receipt of the appeal.  *Id*. § 701.8(i) (incorporating § 701.5).

As set forth above, at each step of the IGP, a decision must be rendered within a specified time period.  "Where the IGRC and/or superintendent do not timely respond, an inmate must appeal 'to the next step,'" assuming there is another step in the IGP.  *Eleby v. Smith*, No. 9:15-CV-0281 (TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 N.Y.C.R.R. § 701.6(g)(2)); *see also Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance . . . can   and must   be appealed to the next level . . . to complete the grievance process.").

Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA.  *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the

merits.") (internal quotations and citations omitted)).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]" (quotations and citations omitted). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotations and internal citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id*. at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end    with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860.

In *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted that, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" The illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry. *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Because non-exhaustion is an affirmative defense, defendants bear the burden of showing that a prisoner has failed to satisfy the exhaustion requirements. *See Jones,* 549 U.S. at 216; *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004), *overruled on other grounds, Woodford*, 548 U.S. at 94-95. Plaintiff must then establish that the IGP grievance procedure was unavailable to him. *See Jones*, 549 U.S. at 216.

### B.      DOCCS IGP Notice Requirements

Neither the PLRA nor the DOCCS IGP impose a requirement that an individual later named as a defendant be identified in the grievance in order to exhaust administrative remedies. *See Espinal v. Goord*, 558 F.3d 119, 126 (2d Cir. 2009) (citing Jones 549 U.S. at 205, 217). Though an inmate is not required to name the responsible parties in his grievance, he must "provide a specific description of the problem." *Id.* at 127; *see also Id.* at § 701.5(a)(2) (grievance should "contain a concise, specific description of the problem."). The exhaustion requirement "is not dissimilar to the rules of notice pleading," and "in order to exhaust . . . inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson*, 380 F.3d at 697.

## VI.    ANALYSIS

### A.      Sufficiency of Notice Regarding Claims Against Hawks, Lavallee, and Rogers in Grievance No. GEN - 7718-12

#### 1.      Hawks

Plaintiff alleges in his amended complaint that Hawks engaged in excessive force on December 11, 2012, and wrote a false IMR in connection with the incident in retaliation for Plaintiff's complaints to the Superintendent regarding anti-Semitic harassment by Hawks. (Dkt.

No. 18 at ¶¶ 37-38.)  In Grievance No. GNE - 7718-12, Plaintiff wrote that Hawks had him brought back to the post when he was attempting to deliver a letter complaining of Hawk's harassment to the Rabbi to give to the Superintendent.  (Dkt. No. 111-1 at 14.)  Plaintiff claims in his grievance that the use of force and subsequent IMR occurred when Plaintiff refused to give the letter to Hawks.  *Id*.  Plaintiff also wrote in the grievance that harassment by Hawks had begun on October 3, and Plaintiff had written a complaint letter to the Superintendent on October 26.  *Id*.  As noted above, the cover page of Plaintiff's grievance asked that his October 26, 2012, letter to the Superintendent be referenced in his grievance.  (Dkt. No. 111-2 at 10-11.)  Plaintiff noted in his grievance complaining of excessive force by Hawks that "in [his] letter of Oct 26, 2012 to the Supt [he] had mentioned this might happen to [him]."  *Id*. at 15.

Although Plaintiff did not use the word "retaliation" in his grievance, the Court finds, based on the foregoing, that the grievance included enough information to provide notice of possible retaliation by Hawks to  "allow prison officials to take appropriate responsive measures," *Johnson,* 380 F.3d at 697, including conducting an investigation as to Hawks' motivation.  Therefore, the Court finds that the grievance satisfied the requirements of § 701.5(a)(2) with regard to the retaliation claim.

### 2.   Lavallee and Rogers

In his amended complaint, Plaintiff alleges Hawks had Lavallee send Plaintiff back to his post when he was taking the letter complaining about Hawks to the Rabbi.  (Dkt. No. 18 at ¶ 10.) Plaintiff also alleges Lavallee joined Hawks in kicking Plaintiff in the face and body while he lay in the mud.  *Id*. at ¶ 14.  Plaintiff claims Rogers failed to intervene to prevent the beat down, and believes Rogers also struck Plaintiff while he lay folded on the floor in handcuffs.  *Id*. at ¶ 15.

19

Plaintiff also claims Rogers dragged him through the mud while he was handcuffed, kicking and striking him. (Dkt. No. 18 at ¶¶ 16, 42.) According to Plaintiff, after he was treated in the infirmary following the incident, he wrote a statement that he was attacked by Hawks and Lavallee. *Id*. at ¶ 20.

Plaintiff has alleged Eighth Amendment excessive force claims against Lavallee and Rogers, along with an Eighth Amendment failure to intervene claim against Rogers. *Id*. at ¶¶ 41-42. Defendants note in support of their motion that Plaintiff's grievance regarding the December 11, 2012, incident, properly numbered GNE - 7718-12, makes no mention of either Lavallee or Rogers. (Dkt. No. 111-2 at ¶ 5. In his response to Defendants' statement of material facts, ¶ 5 stating that the grievance made no reference to Lavallee or Rogers, Plaintiff wrote "I knew officer LaValley (sic) and Sgt Rogers by sight, but did not know thier (sic) names at the time of the attack." (Dkt. No. 114-2 at 15.)

a.    <u>Excessive Force Claims Against Lavallee and Rogers</u>

In *Espinal*, the plaintiff's grievance alleged the participation of "countless other security officers" in addition to alleging the involvement of two named correctional officers. *Espinal*, 558 F.3d at 127. The plaintiff's grievance in *Espinal* also included the specific date, time, and location of the incident. *Id*. The Second Circuit found the grievance gave officials the necessary information to investigate the complaints and which officers were involved in the incident. *Id*.

Plaintiff wrote in his grievance that he was "beaten to the ground and severely beaten by CO Hawks rolled into a mud puddle between the guardhouse and the walkway, handcuffed, taken through the first door of the infirmary where numerous inmates were awaiting meds, to the Sgt's office for questioning." (Dkt. No. 111-1 at 14.) Unlike in *Espinal*, there is nothing whatsoever

20

in Plaintiff's grievance that would reasonably have put Greene officials on notice that Plaintiff

was claiming anyone other than Hawks had used force on him.  Therefore, the Court finds that

the grievance failed to include a "specific description of the problem" sufficient to satisfy the

exhaustion requirements under the DOCCS IGP with regard to Plaintiff's excessive force claims

against Lavallee and Rogers.[7]

                          b.    Failure to Intervene Claim Against Rogers

        The Court does find the information in Plaintiff's Grievance No. GNE - 7718-12

sufficient to place Greene officials on notice of Rogers' alleged failure to intervene in Hawks'

use of what Plaintiff claims to be excessive force on him.  Although Plaintiff did not identify

Rogers by name in his grievance, he did indicate that a sergeant was present during the December

11, 2012, incident.  (Dkt. No. 111-1 at 14.)  According to the grievance, a sergeant arrived while

Hawks had Plaintiff pushed against the wall.  *Id*.  After the sergeant identified himself as such,

Plaintiff gave him the envelope with the letter Plaintiff was attempting to deliver to the Rabbi.

*Id*.

        While the grievance does not specifically state that the sergeant remained long enough to

see the alleged beating by Hawks, the Court concludes the information in the grievance was

sufficient to place the Greene officials on notice that there was a sergeant present for at least a

--------------------------------------------------------------------------------

        [7]  The Court notes that in Plaintiff's February 7, 2013, "Notice of Decision to Appeal"
Grievance No. GNE - 7716-12, he wrote that "7716-12 concerned an officer Hawks." (Dkt. No.
111-1 at 17.)  At his disciplinary hearing on January 3, 3013, on the IMR regarding the December
11, 2012, incident, Plaintiff informed the hearing officer that "I was pushed to the ground and
beaten by C.O. Hawks uh I suffered two black eyes, my forhead (sic) was swollen, bumps all
over, I still can't walk straight."  (Dkt. No. 64-1 at 12.)  The only use of force memorandum
regarding the December 11, 2012, incident included in the summary judgment record is Hawks'
December 24, 2012, memorandum.  (Dkt. No. 111-2 at 22.)

part of the use of force incident, allowing an investigation regarding the sergeant's action or

inaction.  At Plaintiff's disciplinary hearing on January 3, 2013, three days after the filing of his

grievance, Defendant Rogers was identified by Hawks as the sergeant at the scene at the time of

the alleged use of force.  (Dkt. No. 64-1 at 15.)  Hawks indicated at the hearing that Rogers was

present during the whole incident.  *Id*. at 16.  Hawks testimony at the hearing gave Greene

officials the information necessary to identify Rogers and investigate his involvement in the

December 11, 2012, incident.  *See Espinal*, 558 F.3d at 127.   Defendants have submitted no

evidence suggesting otherwise.

Based upon the foregoing, the Court finds that Grievance No. GNE - 7718-12 was

"sufficient to advance the 'benefits of exhaustion,'" with regard to Plaintiff's failure to intervene

claim against Rogers.  *Id*. (quoting Jones, 549 U.S. at 219).

### B.    Plaintiff's Failure to Exhaust and Availability of the DOCCS IGP

Inasmuch as Plaintiff did not appeal Grievance No. GNE - 7718-12 to CORC and receive

a determination from CORC before commencing this action, the Court finds Defendants have

satisfied their burden of establishing that he failed to exhaust the grievance in accordance with

the requirements of the DOCCS IGP.  *See Jones*, 549 U.S. at 211, 218, *Woodford*, 548 U.S. at

88.  However, the Court also finds, based upon the summary judgment record, that the DOCCS

IGP was rendered unavailable to Plaintiff for Grievance No. GNE - 7718-12 by the actions and

inaction of DOCCS personnel.

Defendants do not dispute that documents sent to Plaintiff regarding the grievance arising

out of the December 11, 2012, incident and filed in the Greene grievance office on December 31,

2012, identified the grievance as Grievance No. GNE - 7716-12.  (*See* Dkt. Nos. 18-2 at 3; 111-2

at 9.)  Nor do Defendants dispute that the Superintendent's determination issued on January 16,

2013, identified the grievance as Grievance No. GNE - 7718-12 (Dkt. No. 111-2 at ¶ 16 and p.

12), and that Plaintiff was not informed of the error in the grievance number in the documents

sent to him until February 11, 2013, long after the time within which to appeal from the

Superintendent's January 16, 2012, determination had expired.  (Dkt. Nos. 111-2 at 36; 114-2 at

26.)

Defendants suggest that even though the Superintendent's determination was labeled

GNE - 7718-12, rather than GNE - 7716-12, Plaintiff should have realized the determination was

to his grievance filed December 31, 2012, because "the body of the decision clearly referenced

plaintiff's complaint as well as his interview by Sergeant Ropeter on December 14, 2012, which

became part of the grievance investigation."  (Dkt. No. 111-2 at ¶ 17.)  The Court, however, finds

the link between the December 11, 2012, incident that was the subject matter of the grievance

and the Superintendent's determination was less than clear and one that the summary judgment

record shows left Plaintiff confused.

The Superintendent's January 16, 2013, determination makes no direct reference to the

December 11, 2012, use of force incident about which Plaintiff had complained and focused

instead on Plaintiff's disciplinary hearing and a verbal and written statement Plaintiff had

allegedly made to Sergeant Ropeter on December 14, 2013, "that he was never assaulted or

mistreated in any way by any staff at Greene Correctional Facility."  *Id*. at 12.  In his February 12,

2013, written statement "To Concerned Parties," Plaintiff wrote he had not made a statement that

he had never been assaulted or mistreated by any Greene staff.  (Dkt. 114-2 at 24.)  Rather, on

December 14, 2013, Plaintiff had signed a statement in the sergeant's office specifically stating

23

he had not been assaulted or harassed by any S-Block staff.  (Dkt. No. 114-2 at 24.)   Plaintiff wrote he had signed a free will statement on December 11, 2012, that he had been attacked by Hawk on December 11, 2012.  *Id*.  Defendants have submitted a "Free Will Statement" signed by Plaintiff on December 14, 2012.  (Dkt. No. 111-2 at 23.)  In the statement, Plaintiff wrote that the only incident he had was on December 11, 2012, and that he had not been been attacked by CFSI staff security or any other employee since.  *Id*. at 24.

In his January 17, 2013, letter to IG Investigator Russo, Plaintiff informed Russo that he had received a notice of denial of a grievance he had never filed and for which he had never received an acknowledgment.  (Dkt. No. 114-2 at 36.)  Plaintiff raised the possibly that someone had made a mistake in numbering because the numbers were so close but concluded it made no sense because the denial of GNE - 7718-12 referred to "new" injuries, which meant they were acknowledging "old" injuries.  *Id*.

The January 16, 2013, letter Plaintiff claims to have sent to the Superintendent after receiving the determination states he did not file GNE - 7718-12 grievance, that his only grievance was GNE - 7716-12, which he made against Hawks for attacking him.  *Id*. at 30. Plaintiff expressed his hope 7718 was not being confused with 7716, the bona fide grievance, and asked for a response.  *Id*.

Plaintiff submitted a notice of decision to appeal GNE - 7716-12 to CORC  (labeled as a replacement for Form 2133) on February 7, 2013, because he had not received a response from the Superintendent within the requisite time period.[8]  (Dkt. No. 114-2 at 21.)  The Greene

_____

[8]  Plaintiff referenced the response he received to GNE - 7718-12, which he described as a grievance he never filed, as bearing "very little resemblance to the actual grievance other than the completion date of December 14, 2012."  (Dkt. No. 114-2 at 21.)

grievance office refused to forward his February 7, 2013, notice of decision to appeal to CORC, (Dkt. No. 111-2 at 36.)[9]  When he asked Melendez to forward his appeal to CORC at the time she told him about the mistake in numbering of the grievance on February 11, 2013, she refused because it was too late to appeal the Superintendent's January 16, 2013, determination, despite Plaintiff not having learned about the grievance office's mistake until the time within which to appeal had expired.  *Id*.

Plaintiff was also unsuccessful in his attempt to file the appeal with CORC by going directly to Bellamy after Melendez's refusal to send it.  (Dkt. Nos. 111-1 at 29; 114-2 at 26-27.)  Both Melendez and Bellamy also denied Plaintiff's request for a copy of Grievance No. GNE - 7718-12 on the grounds that Directive 4040 did not require them to do so.  (Dkt. Nos. 18 at ¶33; 111-1 at 29.)

Based upon the foregoing, the Court finds that: (1) the confusion which arose in Plaintiff's mind as a result of the mistake by the Greene grievance office in the numbering of his grievance; (2) the Greene grievance office's failure to inform Plaintiff of the mistake before the time to appeal the Superintendent's January 16, 2013, determination to CORC had expired; and (3) the refusal by DOCCS personnel to take action to remedy the problems caused Plaintiff by the grievance office mistake, including his failure to file a timely appeal to CORC from the January 16, 2013, determination, rendered the DOCCS IGP procedure unavailable to Plaintiff with regard to Grievance No. GNE - 7718-12.

---

[9]  According to Mauro, Plaintiff's February 7, 2013, letter appeal "appear[ed] to have been denied as untimely in accordance with Directive 4040."  (Dkt. No. 111-2 at ¶ 20.)

**VII.    CONCLUSION**

The Court has found that Grievance No. GNE - 7718-12 provided the requisite notice for exhaustion purposes of Plaintiff's claims for excessive force and retaliation against Hawks and his claim for failure to intervene against Rogers, but failed to do so with regard to Plaintiff's excessive force claims against LaVallee and Rogers.  The Court has also found that Defendants have established that Plaintiff failed to exhaust Grievance No. GNE - 7718-12 by failing to file an appeal to CORC from the Superintendent's January 16, 2013, determination denying the grievance as required under the DOCCS IGP.  However, the Court has concluded that the summary judgment record reveals, under the circumstances presented, exhaustion was rendered unavailable to Plaintiff.

Based upon the foregoing, the Court recommends that: (1) Defendant Lavallee be granted summary judgment on failure to exhaust grounds; (2) Defendant Rogers be granted summary judgment on failure to exhaust grounds as to Plaintiff's excessive force claim and denied summary judgment on Plaintiff's failure to intervene claim; and (3) Defendant Hawks be denied summary judgment on failure to exhaust grounds.

**WHEREFORE**, it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment for failure to exhaust administrative remedies (Dkt. No. 111) be **GRANTED** in part and **DENIED** in part; and it is further

**RECOMMENDED** that Defendant Hawks be **DENIED** summary judgment for failure to exhaust administrative remedies; and it is further

**RECOMMENDED** that Defendant Lavallee be **GRANTED** summary judgment for failure to exhaust administrative remedies; and it is further

**RECOMMENDED** that Defendant Rogers be **GRANTED** summary judgment as to Plaintiff's excessive force claim on failure to exhaust administrative remedies grounds and be **DENIED** summary judgment on those grounds as to Plaintiff's failure to intervene claim; and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[10]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: January 9, 2018
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[10]  If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

1999 WL 983876
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Craig COLE, Plaintiff,
v.
Christopher P. ARTUZ, Superintendent, Green
Haven Correctional Facility, R. Pflueger, A.
Glemmon, Sgt. Stevens, Lt. Haubert, Capt.
W.M. Watford, Capt. T. Healey, and John
Doe # 1–5, all as individuals, Defendants.

No. 93 Civ. 5981(WHP) JCF.
|
Oct. 28, 1999.

**Attorneys and Law Firms**

Mr. Craig Cole, Bare Hill Correctional Facility, Malone,
New York, Legal Mail, Plaintiff, pro se.

William Toran, Assistant Attorney General, Office of the
Attorney General of the State of New York, New York,
New York, for Defendant.

*MEMORANDUM & ORDER*

PAULEY, J.

 **\*1**  The remaining defendant in this action, Correction
Officer Richard Pflueger, having moved for an order,
pursuant to Fed.R.Civ.P. 56, granting him summary
judgment and dismissing the amended complaint, and
United States Magistrate Judge James C. Francis IV
having issued a report and recommendation, dated
August 20, 1999, recommending that the motion
be granted, and upon review of that report and
recommendation together with plaintiff's letter to this
Court, dated August 28, 1999, stating that plaintiff does
"not contest the dismissal of this action", it is

ORDERED that the attached report and
recommendation of United States Magistrate Judge
James C. Francis IV, dated August 20, 1999, is adopted in
its entirety; and it is further

ORDERED that defendant Pflueger's motion for
summary judgment is granted, and the amended
complaint is dismissed; and it is further

ORDERED that the Clerk of the Court shall enter
judgment accordingly and close this case.

*REPORT AND RECOMMENDATION*

FRANCIS, Magistrate J.

The plaintiff, Craig Cole, an inmate at the Green Haven
Correctional Facility, brings this action pursuant to 42
U.S.C. § 1983. Mr. Cole alleges that the defendant
Richard Pflueger, a corrections officer, violated his First
Amendment rights by refusing to allow him to attend
religious services. The defendant now moves for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure. For the reasons set forth below, I recommend
that the defendant's motion be granted.

*Background*

During the relevant time period, Mr. Cole was an
inmate in the custody the New York State Department
of Correctional Services ("DOCS"), incarcerated at the
Green Haven Correctional Facility. (First Amended
Complaint ("Am.Compl.") ¶ 3). From June 21, 1993 to
July 15, 1993, the plaintiff was in keeplock because of
an altercation with prison guards. (Am.Compl.¶¶ 17–
25). An inmate in keeplock is confined to his cell for
twenty-three hours a day with one hour for recreation.
(Affidavit of Anthony Annucci dated Dec. 1, 1994 ¶
5). Pursuant to DOCS policy, inmates in keeplock must
apply for written permission to attend regularly scheduled
religious services. (Reply Affidavit of George Schneider
in Further Support of Defendants' Motion for Summary
Judgment dated September 9, 1996 ("Schneider Aff.") ¶
3). Permission is granted unless prison officials determine
that the inmate's presence at the service would create
a threat to the safety of employees or other inmates.
(Schneider Aff. ¶ 3). The standard procedure at Green
Haven is for the captain's office to review all requests
by inmates in keeplock to attend religious services.
(Schneider Aff. ¶ 3). Written approval is provided to the
inmate if authorization is granted. (Affidavit of Richard
Pflueger dated April 26, 1999 ("Pflueger Aff.") ¶ 5). The
inmate must then present the appropriate form to the

gate officer before being released to attend the services. (Pflueger Aff. ¶ 5).

**\*2** On June 28, 1993, the plaintiff submitted a request to attend the Muslim services on July 2, 1993. (Request to Attend Scheduled Religious Services by Keep–Locked Inmate dated June 28, 1993 ("Request to Attend Services"), attached as Exh. B to Schneider Aff.) On June 30, 1993, a supervisor identified as Captain Warford signed the request form, indicating that the plaintiff had received permission to attend the services. (Request to Attend Services). Shortly before 1:00 p.m. on July 2, 1993, the plaintiff requested that Officer Pflueger, who was on duty at the gate, release him so that he could proceed to the Muslim services. (Pflueger Aff. ¶ 3). However, Officer Pflueger refused because Mr. Cole had not presented the required permission form. (Pflueger Aff. ¶ 3). The plaintiff admits that it is likely that he did not receive written approval until some time thereafter. (Deposition of Craig Cole dated February 28, 1999 at 33–35, 38).

On August 25, 1993, the plaintiff filed suit alleging that prison officials had violated his procedural due process rights. On December 4, 1995, the defendants moved for summary judgment. (Notice of Defendants' Motion for Summary Judgment dated December 4, 1995). The Honorable Kimba M. Wood, U.S.D.J., granted the motion and dismissed the complaint on the grounds that the plaintiff failed to show that he had been deprived of a protected liberty interest, but she granted the plaintiff leave to amend. (Order dated April 5, 1997). On May 30, 1997, the plaintiff filed an amended complaint, alleging five claims against several officials at the Green Haven Correctional Facility. (Am.Compl.) On November 16, 1998, Judge Wood dismissed all but one of these claims because the plaintiff had failed to state a cause of action or because the statute of limitations had elapsed. (Order dated Nov. 16, 1998). The plaintiff's sole remaining claim is that Officer Pflueger violated his First Amendment rights by denying him access to religious services on July 2, 1993. The defendant now moves for summary judgment on this issue, arguing that the plaintiff has presented no evidence that his First Amendment rights were violated. In addition, Officer Pflueger contends that he is entitled to qualified immunity. (Defendants' Memorandum of Law in Support of Their Second Motion for Summary Judgment).

A. *Standard for Summary Judgment*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the movant meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute concerning material facts. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson,* 477 U.S. at 255; *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Anderson,* 477 U.S. at 249–50 (citation omitted). "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997) (citation and internal quotation omitted); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible") ((citations omitted)). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co.,* 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288 (1968)); *Montana v. First Federal Savings & Loan Association,* 869 F.2d 100, 103 (2d Cir.1989).

**\*3** Where a litigant is *pro se,* his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's "bald assertion," unsupported by evidence, is not sufficient to overcome a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Gittens v. Garlocks Sealing Technologies,* 19 F.Supp.2d 104, 110 (W.D.N.Y.1998); *Howard Johnson International, Inc. v. HBS Family, Inc.,* No. 96 Civ. 7687, 1998 WL 411334, at \*3 (S.D .N.Y. July 22, 1998); *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at \*5 (S.D.N.Y. Dec. 5, 1994) ("the work product of *pro se* litigants should be generously and liberally construed, but [the *pro se*' s] failure to allege either specific facts or particular laws that have been violated renders this attempt to oppose defendants' motion ineffectual"); *Stinson v. Sheriff's Department,* 499 F.Supp. 259, 262 (S.D.N.Y.1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

B. *Constitutional Claim*
It is well established that prisoners have a constitutional right to participate in congregate religious services even when confined in keeplock. *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993); *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir1989). However, this right is not absolute. *See Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990) (right to free exercise balanced against interests of prison officials). Prison officials can institute measures that limit the practice of religion under a "reasonableness" test that is less restrictive than that which is ordinarily applied to the alleged infringement of fundamental constitutional rights. *O'Lone v. Estate of Shaabazz,* 482 U.S. 342, 349 (1986). In *O'Lone,* the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 349 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). The evaluation of what is an appropriate and reasonable penological objective is left to the discretion of the administrative officers operating the prison. *O'Lone,* 482 U.S. at 349. Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979).

The policy at issue here satisfies the requirement that a limitation on an inmate's access to religious services be reasonable. The practice at Green Haven was to require inmates in keeplock to present written approval to the prison gate officer before being released to attend religious services. This policy both accommodates an inmate's right to practice religion and allows prison administrators to prevent prisoners posing an active threat to security from being released. The procedure is not overbroad since it does not permanently bar any inmate from attending religious services. Rather, each request is decided on a case-by-case basis by a high ranking prison official and denied only for good cause.

**\*4** Furthermore, in order to state a claim under § 1983, the plaintiff must demonstrate that the defendant acted with deliberate or callous indifference toward the plaintiff's fundamental rights. *See Davidson v. Cannon* 474 U.S. 344, 347–48 (1986) (plaintiff must show abusive conduct by government officials rather than mere negligence). Here, there is no evidence that the defendant was reckless or even negligent in his conduct toward the plaintiff or that he intended to violate the plaintiff's rights. Officer Pflueger's responsibility as a prison gate officer was simply to follow a previously instituted policy. His authority was limited to granting access to religious services to those inmates with the required written permission. Since Mr. Cole acknowledges that he did not present the necessary paperwork to Officer Pflueger on July 2, 1993, the defendant did nothing improper in denying him access to the religious services. Although it is unfortunate that the written approval apparently did not reach the plaintiff until after the services were over, his constitutional rights were not violated. [1]

*Conclusion*
For the reasons set forth above, I recommend that the defendant's motion for summary judgment be granted and judgment be entered dismissing the complaint. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with

Case 9:15-cv-01171-TJM-TWD   Document 151   Filed 01/09/18   Page 31 of 42

the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William H. Pauley III, Room 234, 40 Foley Square, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 983876

Footnotes

1    In light of this finding, there is no need to consider the defendant's qualified immunity argument.

---

End of Document                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 986123
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Terrell K. ELEBY, Plaintiff,
v.
G. SMITH and N. Vevone, Defendants.

Civil Action No. 9:15-CV-0281 (TJM/DEP)
|
Signed January 9, 2016
|
Filed 01/09/2017

**Attorneys and Law Firms**

TERRELL K. ELEBY, 86-A-0908, Sing Sing
Correctional Facility, 354 Hunter Street, Ossining, NY
10562, Pro Se.

FOR DEFENDANTS:ERIC T. SCHNEIDERMAN,
New York State Attorney General, OF COUNSEL:
CHRISTOPHER J. HUMMEL, ESQ., Assistant
Attorney General, The Capitol, Albany, NY 12224.

**REPORT AND RECOMMENDATION**

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE
JUDGE

**\*1** This is a civil rights action brought by *pro se*
plaintiff Terrell Eleby against three individuals employed
by the New York State Department of Corrections and
Community Supervision ("DOCCS"), one of whom has
since been dismissed from the action, pursuant to 42
U.S.C. § 1983. In his complaint, plaintiff alleges that two
of the defendants assaulted him in violation of his Eighth
Amendment rights, and the third defendant violated his
Fourteenth Amendment rights by issuing an allegedly
false misbehavior report against him and confining him in
the special housing unit ("SHU") at the prison facility in
which he was housed.

Currently pending before the court is a motion brought
by the remaining two defendants seeking the entry of
summary judgment in their favor based upon plaintiff's
alleged failure to exhaust available administrative

remedies before filing suit. For the reasons set forth below,
I recommend that the defendants' motion be granted.

I. BACKGROUND [1]
Plaintiff is a prison inmate currently held in the custody
of the DOCCS. *See, e.g.,* Dkt. No. 29-2 at 13. Although
plaintiff is now confined elsewhere, at the times relevant
to this action he was housed in the Auburn Correctional
Facility ("Auburn") located in Auburn, New York. *Id.* at
18.

In his complaint, plaintiff alleges that on January 14, 2015,
he was waiting in one of Auburn's hospital dormitory
rooms to be escorted to an outside facility for a medical
examination. Dkt. No. 1 at 4; Dkt. No. 29-2 at 54. At
approximately 10:00AM, defendants Smith and Vevone,
both of whom are corrections officers, arrived at plaintiff's
room to escort him on the medical trip. Dkt. No. 1 at
4. While plaintiff was attempting to remove his clothes
for a mandatory strip search, defendant Smith "violently
and physically attacked [him]." *Id.*; *see also* Dkt. No. 29-2
at 58. According to plaintiff, both defendants Smith and
Vevone "jumped on [his] back," and defendant Smith
punched him repeatedly in the eye, head, neck, back, and
ribs. Dkt. No. 29-2 at 58, 62-63. After approximately five
minutes Sergeant Cudla, who is not a named defendant
in the action, arrived at plaintiff's dorm, physically
intervened, and ordered defendants Smith and Vevone to
cease the assault and leave the room. Dkt. No. 1 at 4-5;
Dkt. No. 29-2 at 58-59, 64. As a result of the alleged
assault, plaintiff suffered various injuries, including a
bloody and swollen eye, swelling and redness to his neck,
and sore ribs. Dkt. No. 1 at 5; Dkt. No. 29-2 at 62-63, 67.

Following the use-of-force incident, defendants Smith and
Vevone issued plaintiff a misbehavior report accusing
him of violating six prison rules. Dkt. No. 22 at 9; Dkt.
No. 29-2 at 72. Following a superintendent's hearing to
address the charges, plaintiff was found guilty on four
of the six counts. Dkt. No. 22 at 13; Dkt. No. 29-2 at
72. As a result of that finding, plaintiff was sentenced
to serve thirty days of disciplinary SHU confinement,
with a corresponding loss of commissary, package, and
telephone privileges. Dkt. No. 22 at 13; Dkt. No. 29-2 at
73-72.

II. PROCEDURAL HISTORY

**\*2** Plaintiff commenced this action on or about March 12, 2015, with the filing of a complaint and accompanied by an application to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. On May 12, 2015, Senior District Judge Thomas J. McAvoy issued a decision and order granting plaintiff's IFP application and accepting his complaint for filing, with the exception of one cause of action. [2] Dkt. No. 11. In his third cause of action, plaintiff asserted a Fourteenth Amendment claim against defendant Lieutenant Quinn based on the allegation that defendant Quinn "conspire[d] and aided ... in writing a false [misbehavior] report after ascertaining the facts [sic] that [defendants Smith and Vevone] were in the wrong." Dkt. No. 1 at 6. Judge McAvoy dismissed that cause of action for failure to state a cognizable claim pursuant to 28 U.S.C. §§ 1915(e), 1915A. Dkt. No. 11 at 9-12.

Following the close of discovery, defendants Smith and Vevone filed the currently pending motion for summary judgment seeking dismissal of plaintiff's complaint, arguing that plaintiff failed to fully exhaust available administrative remedies before filing this action. Dkt. No. 29-5. Plaintiff has filed a response in opposition to defendants' motion, which is now fully briefed, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

## III. DISCUSSION

### A. Legal Standard Governing Summary Judgment

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson*, 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. Plaintiff's Exhaustion of Administrative Remedies

**\*3** In their motion, defendants contend that plaintiff's complaint is subject to dismissal because plaintiff has failed to exhaust available administrative remedies as required under the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), prior to commencing this action. *See generally* Dkt. No. 29-5 at 2.

### 1. Legal Principles Governing Exhaustion Under the PLRA

The PLRA, which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is "mandatory" and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136

S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *Wilson v. McKenna*, ––– Fed.Appx. –––, No. 15-3496, 2016 WL 5791558, at *1 (2d Cir. Oct. 4, 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." [3] *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).

New York affords state prison inmates the opportunity to seek redress of complaints regarding prison conditions through a grievance procedure that is designated as the Inmate Grievance Program ("IGP"). *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC") [4] have up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal. [5] *Id.* at § 701.5(c)(3)(i), (ii).

**\*4** The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to

render a written decision within thirty days of receipt of an appeal. *Id.* at § 701.5(d)(2)(i).

It is worth noting that, as in this case, where an inmate complains of harassment or other misconduct by corrections officers or prison employees, the IGP provides for an expedited review process. 7 N.Y.C.R.R. § 701.8. In particular, the IGP requires inmates "who wish[ ] to file a grievance complaint that alleges employee harassment [to] follow the procedures set forth in [7 N.Y.C.R.R §] 701.5(a)[.]" *Id.* at § 701.8(a). As was noted above, section 701.5(a)(1) provides that, *inter alia*, the inmate shall submit his grievance to the clerk within twenty-one days of the incident of which he complains. *Id.* at § 701.5(a)(1). On the same day the clerk receives a grievance complaining of employee harassment, he must forward it "to the superintendent by the close of business." *Id.* at § 701.8(b).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/ or superintendent do not timely respond, an inmate must appeal "to the next step." *Id.* at § 701.6(g)(2); *Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, J.) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance ... can— and must—be appealed to the next level ... to complete the grievance process."). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).") (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to

WESTLAW    © 2018 Thomson Reuters. No claim to original U.S. Government Works.    3

exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA. [6] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

### 2. Analysis

**\*5** The record now before the court firmly establishes that plaintiff did not exhaust the available administrative remedies in accordance with the PLRA before commencing this action. According to plaintiff, following the alleged assault, he submitted a (1) grievance, [7] (2) letter to the superintendent at Auburn, (3) memorandum to the IGP supervisor at Auburn, and (4) letter to the New York State Inspector General ("IG") complaining of the alleged assault by defendants Smith and Vevone. [8] Dkt. No. 29-2 at 25-26, 39-40, 46-47, 50, 94-99, 104. Plaintiff did not receive any written response to any of his correspondence. Dkt. No. 29-2 at 40-42, 48-49, 51-53. He claims, however, that an officer stationed at Auburn, Sergeant Cudla, conducted an in-person interview of him on January 22, 2015, in connection with the grievance allegedly filed, and the IG's office conducted an investigation that included an interview of plaintiff in or about April 2015. *Id.* at 40-42, 48-49, 51-53. He also contends that he spoke directly to Deputy Robisson, the Deputy of Superintendent for Security at Auburn, regarding the assault. *Id.* at 31-32, 47-48, 100.

Notwithstanding the fact that he did not receive a written response to any of his correspondence regarding the alleged assault, plaintiff admittedly neglected to appeal the lack of a response to the next level of the IGP. *Id.* at 48-51. Because the IGP has been interpreted by courts in this circuit as requiring inmates to appeal to the next level when they do not receive a timely response to their grievance, plaintiff should have appealed to the superintendent and/or the CORC when he failed to receive a written response to the grievance he allegedly filed. *See* 7 N.Y.C.R.R. § 701.6(g)(2) ("[M]atters not decided within the time limits may be appealed to the next step."); *Dabney v. Pegano*, 604 Fed.Appx. 1, 4-5 (2d Cir. 2015) (citing section 701.6(g) and concluding that, based on that provision, the plaintiff had "an unimpeded path to the CORC, notwithstanding his claims that the Great Meadow grievance clerk failed to process his complaint and that the Clinton superintendent ignored his appeal"); *Hyliger v. Gebler*, 624 Fed.Appx. 780, 782 (2d Cir. 2015) ("Under the regulations ..., if at any step of the grievance process[ ] an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to appeal to the next step. Thus, when [the plaintiff] did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy." (quotation marks, alteration, citation, and footnote omitted)). The record in this case shows, without contradiction, that while plaintiff appealed other grievance denials to the CORC, he did not do so in connection with defendants' alleged assault. Dkt. No. 29-3 at 4. This default constitutes a failure to exhaust available administrative remedies for purposes of the PLRA.

Liberally construing plaintiff's response to defendants' pending motion, he contends that he fully exhausted administrative remedies before commencing this action because his grievance involved allegations of employee harassment, and, consequently, by sending his letter directly to the superintendent he satisfied the requirements of the IGP. Dkt. No. 31 at 5. The IGP, however, clearly mandates that even those grievances complaining of employee harassment must be filed with the IGP clerk, who then must forward the grievance to the superintendent on the day of receipt. 7 N.Y.C.R.R. § 701.8(a). Writing and sending a letter directly to a superintendent does not satisfy the IGP. *See Dabney*, 604 Fed.Appx. at 3 ("The IGP also has an expedited

process for harassment grievances, which pertains to employee conduct meant to annoy, intimidate, or harm an inmate. These grievances go directly to a superintendent." (quotation marks, citations omitted)); *see also Lopez v. Bushey*, No. 11-CV-0418, 2014 WL 2807532, at \*9 (N.D.N.Y. Apr. 7, 2014) (Dancks, M.J.) ("If the grievance involves a claim of misconduct by staff, harassment or discrimination, it receives a code of 49.... [T]he grievance is handled expeditiously by passing through the IGRC and going directly to the superintendent of the facility.").

**\*6** Plaintiff next argues that he appealed the disciplinary hearing determination related to the misbehavior report he was issued, following the alleged assault by defendants Smith and Vevone, on January 14, 2015. Dkt. No. 31 at 3. Appealing a disciplinary hearing determination, however, is no substitute for filing and pursuing to completion a grievance through the IGP. [9] *See, e.g., McCoy v. Goord*, 255 F. Supp. 2d 233, 256 (S.D.N.Y. 2003).

Plaintiff also "asserts ... that the defendants hinder[ed] [his] complaint from reaching the CORC and from being properly filed with the IGRC." Dkt. No. 31 at 5. While I am mindful of my obligation to draw all inferences in favor of the non-moving party on summary judgment, *Terry*, 336 F.3d at 137, this conclusory allegation is not supported by any record evidence. Indeed, plaintiff sets forth this contention in an unsworn memorandum of law, which is decidedly not evidence. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 142 (2d Cir. 2003) ("In support of the assertion that the police had received complaints of drug activity in the area, the district court cited, not to admissible evidence, but to the defendants' memorandum of law, which is not evidence at all."). In any event, even assuming plaintiff's contention constitutes competent evidence, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996). At his deposition in this matter, plaintiff unequivocally testified that he did not file an appeal of his grievance to the CORC. Dkt. No. 29-2 at 49-51. He now attempts to create a dispute of fact by arguing that defendants thwarted his appeal from reaching the CORC. Dkt. No. 31 at 5. This he cannot do. *Hayes*, 84 F.3d at 619.

Finally, to the extent plaintiff contends that his letter to the IG and any subsequent investigation constitutes exhaustion under the PLRA, plaintiff is incorrect. *See, e.g., Goodson v. Silver*, No. 09-CV-0494, 2012 WL 4449937, at \*9 (N.D.N.Y. Sept. 25, 2012) (Suddaby, C.J.) ("[A]n IG's investigation of a matter and conclusion that it is unsubstantiated does not satisfy the exhaustion requirement[.]" (citing cases)).

In summary, because plaintiff admittedly failed to pursue a grievance filed under the IGP to completion by filing an appeal to the CORC, and because he has failed to set forth any evidence that the IGP was rendered unavailable to him, I recommend that defendants' motion be granted.

## IV. SUMMARY AND RECOMMENDATION

Plaintiff's remaining cause of action alleges that defendants Smith and Vevone applied excessive force against him on January 14, 2015. Although plaintiff alleges that he filed various written documents—including a grievance in accordance with the IGP—complaining of defendants' use of force, he admits that he did not pursue the matter through the IGP by seeking review of his grievance by the CORC, as required under the available grievance program. Accordingly, it is respectfully

**\*7** RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 29) be GRANTED and that plaintiff's complaint in this matter be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [10] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

The clerk of the court is respectfully directed to serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

## All Citations

Slip Copy, 2017 WL 986123

2017 WL 986123

## Footnotes

1    In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

2    Plaintiff's first and second IFP applications were denied as incomplete. Dkt. Nos. 4, 7. Following those denials, plaintiff filed a third IFP motion, on or about April 2, 2015, which was then granted by Judge McAvoy. Dkt. Nos. 9, 11.

3    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

4    The IGRC is comprised of "two voting inmates, two voting staff members, and a non-voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

5    Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of an appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

6    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

7    Aside from plaintiff's testimony at his deposition, there is no record evidence to support his allegation that he filed a grievance in accordance with the IGP. *See, e.g.,* Dkt. No. 29-3 at 4; Dkt. No. 29-4 at 2.

8    In or about 2014 the DOCCS Office of Special Investigations assumed the role previously played by the IG, including investigating complaints regarding prison conditions. *See* DOCCS Directive No. 0700, available at http://www.doccs.ny.gov/Directives/0700.pdf.

9    In any event, plaintiff's appeal of the disciplinary hearing determination does not complain of excessive force used by defendants Smith and Vevone. Dkt. No. 22 at 22-23. Instead, plaintiff argued on appeal that the hearing determination was based on insufficient evidence. *Id.* Accordingly, even assuming the appeal from the disciplinary hearing could act as a substitute for filing and pursuing a grievance through the IGP, plaintiff's appeal did not place prison officials on notice of his complaints of excessive force because he did not raise them in his appeal. *Id.*

10    If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 3948100
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Jonathan Mena, Plaintiff,
v.
City of New York, et al., Defendants.

No. 13-cv-2430 (RJS)
|
Signed 07/19/2016

**Attorneys and Law Firms**

Jonathan Mena, Stormville, NY, pro se.

Omar Javed Siddiqi, Ryan Glenn Shaffer, New York City Law Department, New York, NY, for Defendants.

OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge

**\*1** Plaintiff Jonathan Mena, who is currently incarcerated and proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Correction Officer Benjamin Eason ("Defendant"), alleging violations of the Eighth Amendment. Now before the Court is Defendant's motion for summary judgment. For the reasons set forth below, the motion is granted.

I. BACKGROUND

A. Facts [1]

On September 9, 2012, while incarcerated at the Otis Bantum Correctional Center ("OBCC") on Rikers Island, Plaintiff was placed in an intake cell in the OBCC's receiving area, which he shared with two other individuals. (56.1 Stmt. ¶¶ 2–3.) Plaintiff alleges that the cell was extremely cold, vermin-infested, and too small to accommodate three men. (*See* Doc. No. 54-1 ("Compl.") 4, 8.) Plaintiff further alleges that these conditions, coupled with the constant noise made by the two other inmates, prevented him from sleeping for the entire 60-

hour period that he was held in the cell. (*See id.* at 4.) Consequently, he asked Defendant, who was on duty, to transfer him to a different cell. (56.1 Stmt. ¶¶ 7–8.) According to Plaintiff, Defendant responded that there was "nothing he could do" about the situation. (*Id.* ¶ 9; *see also* Doc. No. 54-2 ("Mena Dep.") 59:5-8.)

Plaintiff avers that he filed a grievance with the OBCC to complain about his experience in the cell. (*See* Compl. at 7.) The New York City Department of Correction ("DOC") has an administrative grievance procedure, known as the Inmate Grievance and Request Program ("IGRP"), for inmates housed at facilities such as the OBCC. The IGRP, which was available and in effect at all times relevant to this lawsuit, requires that inmates first file a complaint with the Inmate Grievance Resolution Committee ("IGRC") within ten days of the complained-of act. (56.1 Stmt. ¶¶ 11–12; *see also* Doc. No. 54-3 ("IGRP Directive") § IV(D)(1).) The IGRC then attempts to resolve the grievance informally within five days, and if the grievance is not informally resolved, then the inmate may request a formal hearing before the IGRC. (56.1 Stmt. ¶ 12; *see also* IGRP Directive §§ IV(G)-(H).) An inmate may appeal the IGRC's decision to the commanding officer, or her designee, and subsequent appeals may be taken to the Central Office Review Committee ("CORC"). (56.1 Stmt. ¶ 13; *see also* IGRP Directive §§ IV(I)-(J).) The CORC's decision is the final and binding decision of the DOC; if an inmate disputes the decision of the CORC, he may independently appeal to the Board of Correction. (IGRP Directive at 47.) Finally, if an inmate does not receive a timely disposition at any point throughout the grievance process, he has the option of either granting an extension of time to the relevant decisionmaker (i.e., the IGRC, the commanding officer, or the CORC) or appealing and proceeding to the next level of review. (56.1 Stmt. ¶ 14; *see also* IGRP Directive §§ IV(D)(9)(b), (10).)

**\*2** As Plaintiff himself acknowledges, after submitting the grievance and receiving no response, he neither granted the DOC an extension of time nor appealed. (*See* Compl. 7–8; Opp'n 6.) In his Complaint, Plaintiff admits that he is "still waiting" for a disposition of his grievance, but does not indicate any steps he has taken to appeal any decision before the IGRC. (*See* Compl. 7.) In response to a question on the Southern District of New York Prison Complaint form asking a plaintiff to "set forth any additional information that is relevant to the exhaustion of your administrative remedies," Plaintiff repeated a

number of his substantive allegations against the OBCC staff, but did not state any information relevant to the grievance process. (*Id.* at 5.) And in his opposition brief in connection with this motion, Plaintiff again notes that he filed "several grievances about the issues in question," but he does not indicate any specific steps he took to appeal to the IGRC or to pursue any other avenue of appellate review within the IGRP. (Opp'n 6.)

### B. Procedural History

On April 11, 2013, Plaintiff commenced this action by filing a complaint against the City of New York, Correction Officer Jaquon Pickwood ("Pickwood"), Correction Officer Sauda Abdul-Malik ("Abdul-Malik"), and Defendant (collectively, "Defendants"), pursuant to Section 1983, asserting violations of his constitutional rights under the Eighth and Fourteenth Amendments. (*See* Doc. No. 1.) On December 9, 2013, Defendants moved to dismiss the Complaint. (Doc. No. 18.) On September 17, 2014, the Court granted Defendants' motion to dismiss with respect to Plaintiff's claims against the City of New York, Pickwood, and Abdul-Malik, and Plaintiff's Fourteenth Amendment claims against Defendant for failure to state a claim upon which relief can be granted, but denied Defendants' motion to dismiss with respect to Plaintiff's Eighth Amendment claim against Officer Eason. (Doc. No. 29.) On September 11, 2015, following the completion of discovery, Defendant filed the instant motion for summary judgment, along with his brief and his 56.1 Statement, arguing that Plaintiff failed to exhaust administrative remedies, that his Eighth Amendment conditions of confinement claim failed on the merits, and that in any event, Defendant was entitled to qualified immunity. (Doc. Nos. 53–55, 57.) Defendant also filed a notice pursuant to Local Civil Rule 56.2 alerting Plaintiff of his obligation to submit a responsive statement and informing him of the consequences of not doing so. (Doc. No. 56.) In accordance with Local Rule 56.2, this notice included copies of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1. (*Id.*) On October 14, 2015, Plaintiff filed a brief opposing summary judgment and submitted several exhibits (*see* Doc. No. 58), but he failed to submit a responsive 56.1 Statement. Defendant submitted his reply on October 22, 2015. (Doc. No. 59 ("Reply").)

### II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party " 'show[s]'– that is, point[s] out ... – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

**\*3** Typically, a "nonmoving party's failure to respond to a [Local Civil] Rule 56.1 statement permits the court

to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (citing *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998)). "This general rule applies equally" to cases involving a *pro se* nonmoving party who has been provided adequate notice of the consequences of failing to properly respond to a summary judgment motion. *Pierre-Antoine v. City of N.Y.*, No. 04-cv-6987 (GEL), 2006 WL 1292076, at *3 (S.D.N.Y. May 9, 2006); *see also Gilliam v. Trustees of Sheet Metal Workers' Nat'l Pension Fund,* No. 03-cv-7421 (KMK), 2005 WL 1026330, at *1 n.2 (S.D.N.Y. May 3, 2005). Even so, the Court "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement," *Holtz,* 258 F.3d at 73, and the Court is obligated to construe *pro se* litigants' submissions liberally, *see McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004).

Here, Plaintiff failed to submit a responsive Rule 56.1 statement, even though Defendant, pursuant to Local Civil Rule 56.2, sent Plaintiff notice of his obligations under Local Civil Rule 56.1 and Federal Rule of Civil Procedure 56 and sent copies of both rules. (Doc. No. 56). In light of Plaintiff's *pro se* status, the Court has exercised its discretion to independently review the record, which reveals no controverted facts. *See Holtz,* 258 F.3d at 73. In fact, as discussed below, Plaintiff's own submissions confirm the material facts contained in Defendant's Rule 56.1 Statement.

### III. DISCUSSION

Defendant argues that summary judgment should be granted because Plaintiff has failed to comply with the administrative exhaustion requirement of the Prison Litigation Reform Act of 1995 (the "PLRA"). The Court agrees.

Under the PLRA, inmates bringing claims with respect to prison conditions under Section 1983 must exhaust the administrative remedies that are available at that prison before proceeding in federal court. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is "mandatory," thus "foreclosing judicial discretion." *Ross v. Blake,* 136 S. Ct. 1850, 1857 (2016); *see also Woodford v. Ngo,* 548 U.S. 81, 84 (2006) (describing the "invigorated exhaustion provision" as "[a] centerpiece of the PLRA's

effort to reduce the quantity of prisoner suits" (citations and quotation marks omitted)). Accordingly, "the law is well-settled that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin v. Rivera,* No. 13-cv-7054 (RJS), 2015 WL 3999180, at *3 (S.D.N.Y. June 29, 2015); *accord Johnson v. N.Y.C. Dep't of Corr.*, No. 13-cv-6799 (CM), 2014 WL 2800753, at *6 (S.D.N.Y. June 16, 2014) ("Assuming that [p]laintiff filed a timely grievance ... and received no response within five business days [,] ... [p]laintiff ... could have taken the next step and requested a hearing."); *Leacock v. N.Y.C. Health Hosp. Corp.,* No. 03-cv-5440 (RMB) (GWG), 2005 WL 483363, at *7 (S.D.N.Y. Mar. 1, 2005) ("[T]hat [plaintiff] allegedly did not receive a response to her grievance does not excuse her from failing to exhaust the appellate remedies available to her."); *Burns v. Moore,* No. 99-cv-966 (LMM) (THK), 2002 WL 91607, at *8 (S.D.N.Y. Jan. 24, 2002) ("Thus, even if [p]laintiff received no response to his initial grievance, [p]laintiff could have sought the next level of review, in this case, to the prison superintendent.").

**\*4** At the OBCC, where Plaintiff was incarcerated, an inmate must exhaust several layers of review, even if the inmate does not receive a timely disposition at the initial stages. (56.1 Stmt. ¶ 12–14.) Here, as Plaintiff reveals in his own complaint and brief in opposition to the motion for summary judgment, he did not exhaust the OBCC administrative procedure. (Compl. 7–8; Opp'n 6.) Rather, he indicates that he filed a grievance but otherwise did not appeal or seek further review through the IGRP process. (Compl. 7–8 (noting that he is "still waiting" for disposition of his grievances and did not seek review at the next levels within IGRP); Opp'n 6 (noting that he filed "several grievances about the issues in question," but omitting reference to any specific steps taken to appeal)). Accordingly, Plaintiff failed to satisfy the PLRA exhaustion requirement.

The Court next considers whether there is any basis for excusing Plaintiff's failure to exhaust administrative remedies at the IGRP. Last month, the Supreme Court forcefully disapproved of judge-made exceptions to the PLRA's exhaustion requirement, stressing the mandatory language of the statute. *See Ross,* 136 S. Ct. at 1862 ("Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement.") In doing so, the Supreme Court expressly

rejected the Second Circuit's prior framework under *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004), and, by extension, *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004), which recognized a "special circumstances" exception to the PLRA's exhaustion requirement. *See Williams v. Priatno*, No. 14-4777, ___ F.3d. ____, ____, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016) ("[T]o the extent that our special circumstances exception ... permits plaintiffs to file a lawsuit in federal court without first exhausting administrative remedies that were, *in fact*, available to them, those aspects of *Giano* and *Hemphill* are abrogated by *Ross*.").

Thus, post-*Ross*, the lone surviving exception to the PLRA's exhaustion requirement is that embedded in its text: that an inmate need only exhaust those administrative remedies that are "available" to him. *Ross*, 136 S. Ct. at 1862; *see also* 43 U.S.C. § 1997e(a). An inmate's failure to exhaust may therefore be excused when his prison's grievance mechanisms are literally or constructively "unavailable." *Ross*, 136 S. Ct. at 1858–59. The Supreme Court described three scenarios in which administrative procedures could be "officially on the books," but "not capable of use to obtain relief," and therefore unavailable. *Id.* While not exhaustive, these illustrations nonetheless guide the Court's inquiry. *See Williams*, 2016 WL 3729383, at *4 n.2. First, an administrative procedure is unavailable when "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to inmates." *Ross*, 136 S. Ct. at 1859. If prison administrators either lack the necessary authority to provide any relief or possess authority but consistently decline to exercise it, the administrative channels are not "available" within the meaning of the PLRA. *Id.*; *see also Booth v. Churner*, 523 U.S. 731, 736, 738 (2001) ("[T]he modifier 'available' requires the possibility of some relief."). Second, an administrative procedure is unavailable where it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* To meet this high bar, the administrative remedy must be "essentially 'unknowable.' " *Id.* Finally, "a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860.

Here, Plaintiff has not alleged – let alone shown – that the administrative procedures at the OBCC were unavailable to him. Although Plaintiff's initial grievance received no

response, this alone is insufficient to show that the IGRP acted as a mere dead end. As stated earlier, "the law is well-settled" that an inmate's "failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin*, 2015 WL 3999180, at *3 (collecting authorities). In short, the DOC's untimeliness in this case is not enough to demonstrate the unavailability of an administrative remedy. This is especially true in light of the IGRP's built-in appeal mechanism, whereby inmates may directly proceed to the next level of review in the event of the DOC's failure to respond to a grievance. (*See* IGRP Directive § IV(D) (9)(b), (10).) Furthermore, Plaintiff has not introduced any facts to indicate that prison officials at OBCC are "consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859.

**\*5** Nor has Plaintiff pointed to any evidence that the IGRP was "so opaque that it [became], practically speaking, incapable of use" and therefore "essentially unknowable." *Ross*, 136 S. Ct. at 1859. While the Second Circuit recently found that certain administrative grievance procedures at a different New York State facility met this standard, the Second Circuit's decision hinged on the "extraordinary circumstances" specific to the case before it, for which the applicable grievance regulations gave "no guidance whatsoever." *See Williams*, 2016 WL 3729383, at *1, *5. Specifically, the plaintiff in *Williams* was housed in a special housing unit and segregated from the regular prison population; therefore, he gave his grievance complaint to a correction officer to file on his behalf. *Williams*, 2016 WL 3729383, at *2. However, the plaintiff in *Williams* alleged that the correction officer to whom he gave his complaint failed to file it, *id.*, and because the Second Circuit concluded that the applicable grievance regulations gave "no guidance whatsoever to an inmate whose grievance was never filed," *id.* at 5, it reversed the District Court's dismissal for failure to exhaust. Here, by contrast the IGRP expressly guides inmates in Plaintiff's position who have filed a grievance but have not received a timely response and directs them to either grant an extension of time to the relevant decisionmaker or to appeal to the next level of review. (*See* IGRP Directive §§ IV(D)(9)(b), (10).) In light of the IGRP's unambiguous directive, Plaintiff has clearly failed to show that the IGRP was "essentially unknowable." *See Ross*, 136 S. Ct. at 1859.

Finally, the Court turns to the third scenario contemplated by the Supreme Court, in which "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859. Plaintiff has not demonstrated, or even suggested, that prison administrators obstructed or interfered with his access to administrative remedies. *See, e.g.*, *Winston v. Woodward*, No. 05-cv-3385 (RJS), 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) (concluding that plaintiff's failure to exhaust administrative remedies was not excused in light of his "failure to put forth any corroborating evidence, either direct or circumstantial, to support his claims that he suffered retaliation in the form of threats, harassment and mail tampering"). Thus, this exception to the exhaustion requirement is also clearly inapplicable.

Therefore, the Court concludes, as a matter of law, that Plaintiff has failed to exhaust administrative remedies available to him through the IGRP and has failed to offer any facts to prove that administrative remedies were not available to him. Because Plaintiff's claims are barred for failure to comply with the administrative exhaustion requirement of the PLRA, Defendant's motion for summary judgment is granted. [2]

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED.

Although Plaintiff has paid the filing fee in this action and has not applied to proceed *in forma pauperis*, the Court nevertheless certifies pursuant to 28 U.S.C. § 1915(a)(3) that, in the event Plaintiff seeks to appeal this Order *in forma pauperis*, any appeal would not be taken in good faith.

The Clerk is respectfully directed to terminate the motion pending at docket number 53, to mail a copy of this order to Plaintiff, and to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 3948100

Footnotes

1    The following facts are drawn from Defendant's unopposed Local Civil Rule 56.1 Statement. (Doc. No. 55 ("56.1 Statement" or "56.1 Stmt.").)) In deciding Defendant's motion for summary judgment, the Court has also considered Plaintiff's submission in opposition to summary judgment (Doc. No. 58 ("Opp'n")), and has conducted an independent review of the record, notwithstanding Plaintiff's failure to submit a statement compliant with Local Civil Rule 56.1. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d. Cir. 2001) (noting that district court "may in its discretion opt to conduct an assiduous review of the record even when" a party has failed to comply with Local Civil Rule 56.1 (citations and quotation marks omitted)).

2    Although Defendant has raised other grounds for summary judgment, including that Plaintiff has failed to establish an Eighth Amendment conditions of confinement claim, and that Defendant is entitled to qualified immunity, the Court finds it unnecessary to address these other arguments because of Plaintiff's failure to exhaust remedies.

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.