UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STUART DIZAK,

        **Plaintiff,**

v.                                                           9:15-CV-1171

B. HAWKS, and D. ROGERS,

        **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

**I. INTRODUCTION**

Plaintiff Stuart Dizak, an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brought this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. The claims that remained for trial were for Eighth Amendment excessive force against Defendant Bruce Hawks, Eighth Amendment failure to intervene against Defendant Donald Rogers, and First Amendment retaliation against Defendant Hawks. The trial resulted in a verdict in favor of the defendants on all claims. *See* Dkt. No. 225. Dizak, who was represented at trial by *pro bono* counsel, Christopher V. Fenlon, Esq., now moves *pro se* for a new trial pursuant to Federal Rule of Civil Procedure 59(a). *See* Dkt. No. 243; *see also* Dkt. Nos. 245 (exhibits in support of motion); 246 (Pl. letter & exhibits in further support of motion); 247 (Pl. letter & exhibits in further support of motion). The defendants oppose Dizak's motion, Dkt. No.

1

250, and applied to the Clerk for taxation of certain costs incurred in defending the action. Dkt. No. 229. Dizak files two (2) replies to the defendants' opposition to his motion, Dkt. Nos. 253 (Reply); 255 (Supplemental Reply), and opposes the defendants' application for taxation of costs. *See* Dkt. No. 239.

For the reasons that follow, Dizak's motion for a new trial is denied, and the defendants' application for taxation of costs is granted in part and denied in part.

## II. BACKGROUND

As recounted by Attorney Fenlon during his opening statement to the jury, Dizak asserted that beginning in September 2012, Hawks, a correction officer at Greene Correctional Facility ("Greene"), began harassing and threatening Dizak for, *inter alia*, his participation in Jewish services and meals at Greene. Dizak contended that Hawks threatened that if Dizak filed a grievance for this harassment, Hawks would retaliate by filing a Tier III misbehavior report resulting in Dizak being placed in the Special Housing Unit ("SHU"). On October 26, 2012, Dizak purportedly prepared a letter to the Superintendent of Greene regarding Hawks' harassment and threats. However, believing that sending such a letter could subject him to further harassment and reprisals, Dizak initially kept the letter hoping that Hawks' harassment would cease -- but it did not.

Dizak testified that on the morning of December 11, 2012, he went to Jewish religious services at the prison Chapel. After the services ended, Dizak asked to speak to the prison rabbi, Susan Gulack, in private. He asked Rabbi Gulack to take him off the list of inmates who could attend Jewish meals and services ("the Jewish callout list"). Dizak testified that when Rabbi Gulack asked why he wanted to be taken off the Jewish callout

2

list, he explained the incidents of harassment he had been having with Hawks and said he wanted to avoid any further harassment.  Dizak also explained that he had drafted a letter to the Superintendent outlining the incidents of harassment from Hawks but had not mailed it. Dizak testified that after he explained the situation to Rabbi Gulack, she went into her office and made a telephone call to some unknown individual.  According to Dizak, when Rabbi Gulack returned, she told Dizak that she was going to try to arrange it so that either Dizak or Hawks would be moved, and instructed Dizak to return later that day with the letter to the Superintendent.  Dizak testified that he was already on the Jewish callout list for Hanukkah services later that day.

The facts at trial indicated that at approximately 4:30 P.M. on December 11, 2012, on his way to the Chapel, Dizak crossed by Hawks' guard station seemingly without incident. Dizak had with him the letter he had written to the Superintendent.  However, Hawks called to the next guard station and told the guard to instruct Dizak to return to Hawks' station. Dizak returned as instructed, and the parties have differing accounts of what occurred next.

Dizak asserted that when he returned to Hawks' station, Hawks demanded to see the letter so he could read what Dizak was saying about him.  Because of the contents of the letter, Dizak refused and indicated that he wanted to give the letter to a corrections sergeant.  Dizak contended that when Rogers, a corrections sergeant, arrived, Dizak attempted to give the letter to him but Hawks attacked Dizak without provocation while Rogers stood by and watched.  Dizak asserted that as a result of Hawks' conduct, he sustained significant injuries, including two black eyes and head trauma causing diminishing mental capacity and memory loss.  Dizak also contended that Hawks filed an inmate misbehavior report, falsely claiming that Dizak had refused  orders to turn over the letter

3

and attempted to flee. The facts indicated that Hawks charged Dizak with (i) violent conduct, (ii) failure to comply with a direct order, (iii) refusal of a search/frisk; and (iv) inference with an employee. At a Tier III hearing, the charges against Dizak were upheld and Dizak was penalized with, among other things, six months SHU time. Upon review by the Superintendent, Dizak's penalty was reduced to four months SHU time, and in September 2014, the New York State Supreme Court, Appellate Division, Third Department, vacated the violent conduct determination. Dizak's SHU time was consequently reduced to three months and fifteen days, although he had already served all of that time.

The defendants maintained that when Dizak returned to Hawks' station, he was questioned about items he possessed. Dizak retrieved an envelope and a pad of paper from his coat, but refused to provide all the items to Hawks or Rogers. The defendants contended that when Dizak refused multiple direct orders to provide the items, Rogers directed that Dizak be placed in mechanical restraints. The defendants further contended that Dizak refused to allow himself to be placed in restraints and attempted to depart the area, in violation of the defendants' orders. The defendants asserted that at this point, Hawks, along with non-defendant Correction Officer D. Lavallee, used physical force to restrain Dizak, and did so in a manner consistent with their training. The defendants further contended that the officers used the level of force necessary to ensure Dizak's compliance. As a result, the defendants asserted, Dizak suffered only minor injuries. The defendants contended that no officer used excessive force against Dizak, and because they were justified in their actions and in bringing valid Tier III charges against Dizak, they did not unlawfully retaliate against him.

4

After hearing the evidence, the jury returned a verdict in favor of the defendants on all claims.

### III. DISCUSSION

The Court first addresses Dizak's motion for a new trial.

#### a. Rule 59 Standard of Review

The Court may "grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A).  "The general grounds for a new trial are that (1) the verdict is against the clear weight of the evidence; (2) the trial court was not fair; (3) substantial errors occurred in the admission or rejection of evidence or the giving or refusal of instructions to the jury; or (4) damages are excessive." *Lawson v. Cty. of Suffolk*, 920 F. Supp. 2d 332, 339 (E.D.N.Y. 2013)(citing 12 *Moore's Federal Practice*, § 59.13[1] at 59–43 (3d Ed. 2005)).  "A district court should grant a new trial motion if it 'is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998) (quoting *Smith v. Lighting Bolt Productions, Inc.*, 835 F.2d 966, 970 (2d Cir. 1987)); *see Greenaway v. County of Nassau*, 327 F. Supp. 3d 552, 560 (E.D.N.Y. 2018)("Essentially, to grant a Rule 59 motion, a district court 'must conclude that the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice....'" )(quoting *Maureen Christensen v. County of Dutchess, N.Y.*, 548 F. App'x 651, 653 (2d Cir. 2013)).  Such a motion may be granted "even if there is substantial evidence to support the jury's verdict." *Id.*  Though a trial judge "is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner,"

*DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998), a jury's verdict should "rarely be disturbed." *Farrior v. Waterford Bd. of Educ.,* 277 F.3d 633, 635 (2d Cir. 2002) (*per curiam*); *see also Carroll v. Cty. of Monroe,* 712 F.3d 649, 653 (2d Cir. 2013); *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417-18 (2d Cir. 2012). Evaluations of the evidence should be made with a "high degree of deference ... to the jury's evaluation of witness credibility...," *ING Global v. United Parcel Serv. Oasis Supply Corp.,* 757 F.3d 92, 97–98 (2d Cir. 2014) (internal quotation marks and citation omitted), and "a trial judge's disagreement with the jury's verdict is not a sufficient reason to grant a new trial.'" *Lawson*, 920 F. Supp.2d at 344 (internal quotation marks and citation omitted).

**b. Analysis**

  **1. Pro Bono Counsel's Representation**

Dizak's motion for a new trial is based primarily upon the allegation that he received ineffective assistance from Attorney Fenlon both at, and in preparation for, his jury trial. *See* Dkt. No. 243; Dkt. Nos. 245-247. Dizak alleges that Attorney Fenlon's representation at trial was "in violation of his duty to adequately represent Mr. Dizak by ignoring his desire to not have the witness Rabbi Gulack to testify for the plaintiff. And as a result of this strategic decision the Rabbi wound up being a hostile witness that benefitted the opposing side and caused the verdict to be in favor of the defense." Dkt. No. 243 at p. 1. Plaintiff also takes issue with the discovery decisions issued in this case, apparently contending that Attorney Fenlon was ineffective in failing to resolve these matters in Plaintiff's behalf. *See* Dkt. No. 243,3-5. In addition, Plaintiff asserts that "one of the most significant issues that Attorney Fenlon failed to address" was that the defendants were justified in their use of

6

force because Plaintiff attempted to flee yet he was not charged with attempted escape. *Id.*, at 6. Plaintiff also alleges that Attorney Fenlon offered faulty settlement guidance, and failed to advise him of the defendants' ability to seek costs at the close of trial. *See* Dkt. No. 246-2 at p. 1; *see also* Dkt. No. 239. Finally, Plaintiff seems to allege that his defense attorney in his criminal case resulting in his incarceration had acted improperly, Dkt. No. 246-2 at p. 2, and that Attorney Fenlon and this criminal defense attorney conspired to provide Plaintiff with ineffective counsel. Dkt. No. 247. Although not specifically argued, the Court treats these pro se contentions as asserting that Attorney Fenlon's conduct deprived Plaintiff of a fair trial. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017)("As we have repeatedly stated, '[w]e liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest.'")(quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

### A. Calling Rabbi Gulack to Testify

In response to Dizak's challenge to Attorney Fenlon calling Rabbi Gulack to testify, the defendants argue that although they are not privy to the conversations between Plaintiff and his trial counsel, the New York Rules of Professional Conduct recognizes that clients typically defer to their attorneys' decisions to call witnesses based on the attorneys' special knowledge and skill. Dkt. No. 250, at 2-3 (citing N.Y. Rules of Prof. Conduct, 1.2(a)).[1]

---

[1]The New York Rules of Professional Conduct provide that "a lawyer shall abide by a client's decisions concerning the objectives of representation," and "shall consult with the client as to the means by which they are to be pursued." *See* N.Y. Rules of Prof. Conduct, 1.2(a), codified at N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.0. *Id.* The rules grant certain decisions solely to the client, such as the decision to settle a matter, and in criminal cases, the plea a client wishes to enter. *Id.* While Rule 1.2(a) does not specifically designate that the choice to call a particular witness falls to the client or the attorney, comment 2 to Rule 1.2 notes that "clients normally defer to the special knowledge and skill of their lawyer with respect to the means to be used to accomplish their objectives, particularly with respect to technical, legal and tactical matters." *Id.*

7

They assert that under the circumstances, no violation of the New York rules occurred because it appears that Dizak deferred to Attorney Fenlon's decision to call Rabbi Gulack. *Id.*, at 2. In reply, Plaintiff asserts that he did not defer to Attorney Fenlon's decision to call Rabbi Gulack, and argues that this decision is "[f]ar more than ineffective assistance of counsel, closer to intentionally subverting the trial." Dkt. No. 253, at 1, ¶1, *see id.,* at ¶ 3.

Despite Dizak's objection,[2] Attorney Fenlon did not breach his duty of representation or deprive Plaintiff of a fair trial by calling Rabbi Gulack as a witness. Although Rabbi Gulack testified that she had no recollection of a meeting with Dizak in December 2012, her testimony provided probative evidence supporting Dizak's account of his discussion with her that morning. Rabbi Gulack testified that in 2012 she had regular meetings with Jewish inmates on Tuesdays at Greene, and that she worked during Hanukkah except on those holidays where there was a religious prohibition on driving. This testimony supported Plaintiff's contention that he met with Rabbi Gulack earlier in the day on December 11, 2012,[3] and was headed to Hanukkah services at the time of the incident in issue.[4] Rabbi Gulack also testified that during her 19-year tenure working at DOCCS facilities, including at Greene, she sometimes attempted to resolve disputes between inmates and staff by contacting her supervisor (the Deputy Superintendent of Programs), a captain, or the Deputy Superintendent of Security. This testimony supported Plaintiff's contention that

---

[2]The facts, as recounted by Dizak, indicate that Attorney Fenlon consulted with Dizak about calling Rabbi Gulack but Dizak objected because she purportedly told Attorney Fenlon that she had no recollection of her encounter with Dizak.

[3]The Court takes judicial notice that December 11, 2012 was a Tuesday.

[4]The Court takes judicial notice that in 2012, Hanukkah was celebrated from December 8 to December 16. Rabbi Gulack's reference to a religious prohibition on driving apparently refers to the prohibition during Shabbat, which is observed from a few minutes before sunset on Friday evening until the appearance of three stars in the sky on Saturday night.

8

Rabbi Gulack made a phone call after Dizak explained why he wanted to be taken off the Jewish callout list, and supported Dizak's contention that Rabbi Gulack said she was going to attempt to resolve the conflict between Hawks and Dizak on the evening of December 11, 2012. Further, Rabbi Gulack testified that she recognized Dizak's name and face, and remembered that he had been moved out of Greene in 2012. This testimony supported Plaintiff's contention that he had had interactions with Rabbi Gulack while at Greene. Thus, the decision to call Rabbi Gulack to testify supported the objectives of Attorney Fenlon's representation, which was to prevail on the constitutional claims. Attorney Fenlon may have also reasoned that the failure to call Rabbi Gulack following Dizak's testimony would have been highlighted by the defense and viewed adversely by the jury - a situation that might have been more detrimental to Dizak's case than calling Rabbi Gulack knowing that she would testify that she had no recollection of the subject conversation.

Furthermore, Rabbi Gulack's testimony did not undermine Dizak's case. Her testimony had no material impact on the central issues the jury was required to resolve, that is, what occurred after Dizak was sent back to Hawks' guard station. While an inference could be drawn that Dizak's credibility was impaired because Rabbi Gulack did not support his account of the conversation at the Chappel that morning, that inference is a weak one. Rabbi Gulack did not disavow that she had such a conversation, only that she did not remember it. Having presided over the trial in this matter, and affording a high degree of deference to the jury's evaluation of witness credibility, the verdict was supported by the clear weight of the evidence. In the end, Attorney Fenlon's decision to call Rabbi Gulack did not violate the New York Rules of Professional Conduct, materially undermine Plaintiff's case, or deny Plaintiff a fair trial.

9

Moreover, Attorney Fenlon's decision to call Rabbi Gulack did not rise to the level of ineffective assistance of counsel. *See United States v. Guevara*, 277 F.3d 111, 127 (2d Cir. 2001)(In order to state a Sixth Amendment claim for ineffective assistance of counsel, a petitioner must prove: "(1) counsel's conduct 'fell below an objective standard of reasonableness,' and (2) this incompetence caused prejudice to . . . defendant.")(quoting *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). First, for reasons discussed above, Attorney Fenlon's decision to call Rabbi Gulack did not fall below an objective standard of professional reasonableness. *See Strickland*, 466 U.S. at 689 (In analyzing the first prong of an ineffective assistance of counsel claim, the Court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."). Second, also for reasons discussed above, Dizak suffered no prejudice by the decision to call Rabbi Gulack to testify. *See Strickland*, 466 U.S. at 694 (To satisfy the second prong of *Strickland*, a party "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

Finally, even assuming that calling Rabbi Gulack to testify amounted to ineffective assistance of counsel, "a lawyer's purported shortcomings present no cognizable ground for relief in a civil matter, where the Sixth Amendment right to counsel does not apply." *Singh v. Home Depot U.S.A., Inc.*, 580 F. App'x 24, 25 (2d Cir. 2014); *see Espaillat v. Cont'l Express, Inc.*, 33 F. App'x 567, 568–69 (2d Cir. 2002)("Ineffective assistance of counsel is not a proper ground for relief in a civil matter.")(citing *United States v. Coven*, 662 F.2d 162, 176 (2d Cir.1981)). Any disagreement between Dizak and Attorney Fenlon about calling

Rabbi Gulack to testify provides an insufficient basis to grant a new trial. *See Hango v. Royall*, 466 F. App'x 30, 34–35 (2d Cir. 2012)( "To the extent that Hango argues that his attorneys provided ineffective assistance by colluding with the defendants, improperly agreeing to dismiss voluntarily his claims against the New Jersey state defendants, failing to introduce certain evidence, and failing to consult with him before making certain decisions, such allegations are insufficient to warrant a new trial because there is no constitutional right to the effective assistance of counsel in civil cases."); *Singh*, 580 F. App'x at 25 ("Any alleged misunderstanding between Singh and his attorney regarding the trial date provides no basis to disturb the judgment."); *see also James v. U.S.*, 330 Fed. Appx. 311, 313 (2d Cir. 2009)("As a final matter, because this is a civil case, James's ineffective assistance of counsel claim is unavailing ... any complaints he might have regarding his attorney's performance at trial must be raised in a separate malpractice proceeding")(internal quotation marks and citations omitted).

For these reasons, Plaintiff's motion for a new trial based on Attorney Fenlon's decision to call Rabbi Gulack to testify is denied.

### B. Plaintiff's Attempt to Flee

Plaintiff is incorrect that Attorney Fenlon failed to address the issue of whether the defendants were justified in their use of force because, they asserted, Plaintiff attempted to flee. Attorney Fenlon addressed this issue in both his opening statement and closing argument to the jury, asserting that such an allegation was illogical in the prison setting and unsupported by the evidence. Thus, Attorney Fenlon did not perform deficiently in this regard. Further, despite Attorney Fenlon's efforts to challenge the defendants' assertion, the jury was entitled to accept the defendants' contention that Dizak attempted to step away

11

from the correction officers, thereby supporting the Tier III charges of failure to comply with a direct order and/or refusal of a search/frisk. Although a matter of semantics, the jury could have concluded that Dizak's conduct in stepping away from the officers amounted to an attempt to flee albeit not an attempt to escape from Greene. Plaintiff's motion for a new trial in this regard is denied.

### C. Discovery & Pretrial Preparation by Attorney Fenlon

Dizak also alleges that certain items of discovery relevant to the case were not provided by the defendants, and contributed to the inadequate representation he received from Attorney Felon. *See* Dkt. No. 243 at pp. 3-5. However, as the defendants note, years before Attorney Fenlon was assigned to represent Dizak at trial, *see* Dkt. No. 166 (Order appointing Attorney Fenlon as Trial Counsel), extensive pretrial litigation was conducted on the matter of discovery, and the production of relevant documents was the subject of a number of motions to compel made by Dizak and ruled on by the Court. *See generally*, Dkt. Nos. 61, 64, 71-76, 81-89, 93-108, 116-119. Dizak cannot use his disagreement with the Court's discovery determinations made before Attorney Fenlon was appointed to establish that he did not receive a fair trial due to deficient attorney performance.

Further, and despite the fact that Attorney Fenlon was appointed "for trial purposes only," Dkt. No. 166, at 1, n. 1, he pursed various discovery-related matters including bringing a letter motion asking, *inter alia*, (1) that the defendants produce copies, and the Court conduct an *in camera* review, of Grievance GNE-7716-12[5] to determine whether it had any relevance to this litigation; and (2) that the defendants produce disciplinary records

---

[5]Grievance GNE-7716-12 was the number of a grievance file by another inmate but that was mistakenly assigned to Plaintiff's grievance concerning the matters underlying this action. Apparently, the defendants recognized the clerical error and corrected it at some point. Dkt. No. 185.

for Hawks and Rogers. Dkt. No. 185. Magistrate Judge Dancks addressed the substance of both of these issues, *see* Dkt. Nos. 186, 187, 188, and Attorney Fenlon filed an appeal of Magistrate Judge Dancks' February 6, 2019 Order addressed to the disciplinary records of Hawks and Rogers. *See* Dkt. No. 191. [6] Attorney Fenlon did not perform deficiently in this regard.

Attorney Fenlon also zealously advocated for Plaintiff in preparation for trial in other regards. Attorney Fenlon issue a subpoena to DOCCS Office of Special Investigations Investigator Irma Russo for her entire investigative file concerning the incident at issue in this litigation, Dkt. No. 185, and because she was scheduled to be away during trial, conducted a video-taped deposition of her which was played at trial. *See* Dkt. 212, Ex. 1; 03/13/19 Text Only Minute Entry. He also filed a motion in limine on Plaintiff's behalf, *see* Dkt. No. 203, and defended against the defendants' motion in limine. *See* Dkt. No. 216.

Attorney Fenlon did not breach his duty of representation, or engage in conduct falling below an objective standard of reasonableness, in addressing arguably unresolved discovery matters or in his preparation for trial. Thus, Dizak fails to establish that he received an unfair trial due to Attorney Fenlon's conduct in this regard.

### D. Settlement Advice & Taxation of Costs

The defendants correctly note that, according to Dizak's papers, Attorney Fenlon accurately notified Plaintiff of the defendants' settlement stance, *see* Dkt. No. 233, at 2 ("The AAG has informed me that he does not have authority to settle this case for five figures."), and, in the same paragraph, stated that he did not know the cost to the State of a

---

[6]The Court resolved this appeal prior to trial. *See* Dkt. Nos. 192, 215.

three-day trial "but you are correct that the State will incur expense in connection with your attendance and the attendance of the Defendants and any witnesses." *Id.* It appears from Plaintiff's exhibit that Attorney Fenlon's reference to the State incurring expenses at trial was in the context of a settlement assessment, not a statement that the defendants would decline to seek the taxation of its witnesses' costs if they prevailed at trial. Further, the defendants correctly note that the Court twice provided Dizak with the Local Rules, *see* Dkt. Nos. 53, 91, which set forth the procedure for taxation of costs. *See* N.D.N.Y. L.R. 54.1. Thus, Dizak was presumably aware of the potential for the taxation of costs if he did not prevail at trial. *See Edwards v. INS*, 59 F.3d 5, 8 (2d Cir. 1995)("While a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them."). Moreover, even assuming that Attorney Fenlon should have informed Plaintiff of this potential but did not, the failure to do so did not result in an unfair trial or render the verdict a manifest injustice. Plaintiff's motion in this regard is denied.

### 2. Dizak's Criminal Defense Attorney

The nature of Dizak's criminal defense attorney's performance is not before the Court in this case. This case is not the proper forum to litigate a petition for a writ of habeas corpus.[7] Further, Plaintiff's argument that Attorney Fenlon and his criminal defense attorney engaged in a conspiracy to provide ineffective assistance of counsel is wholly without merit. As indicated above, Attorney Fenlon did not provide ineffective assistance of counsel.

---

[7] On September 9, 2019, Dizak filed a petition for a writ of habeas corpus challenging his New York State conviction. *See Dizak v. Hennessy*, 9:19-cv-01104 (MAD/DJS), Dkt. No. 1. The Hon. Mae A. D'Agostino, U.S. District Judge , transferred this action to the Western District of New York. *See id.*, at Dkt. No. 8.

Plaintiff's motion for a new trial on this basis is denied.

### 3. General Discovery Disputes

Plaintiff's general disagreement with the discovery decisions in this case do not provide a valid basis for a new trial. See *Carlson v. Parry*, No. 06-CV-6621P, 2013 WL 5354517, *5 (W.D.N.Y. Sept. 24, 2013)("Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite of the apple.")(quoting *Kogut v. Cty. of Nassau*, 2013 WL 3820826, *2 (E.D.N.Y. July 22, 2013)). Furthermore, these disagreements do not demonstrate that the trial was unfair, or that substantial errors occurred in the admission or rejection of evidence.

### 4. Conclusion - New Trial Motion

For the reasons discussed above, Plaintiff has failed to establish that he was deprived of a fair trial. Furthermore, and based on the Court's familiarity with the evidence in this case, the Court finds that the verdict is not against the clear weight of the evidence, the jury did not reach a seriously erroneous result, and the verdict is not a miscarriage of justice. Accordingly, Plaintiff's motion for a new trial is denied.

### b. Taxation of Costs

The Court next addresses the defendants' application for taxation of certain costs. Federal Rule of Civil Procedure 54(d)(1) allows the Court to award to the prevailing party its costs. Fed. R. Civ. R. 54(d)(1);[8] *see Kohus v. Toys R Us, Inc.*, 282 F.3d 1355, 1357 (Fed.

---

[8] Federal Rule of Civil Procedure 54(d)(1) provides:

(d) Costs; Attorney's Fees.

(1) Costs Other Than Attorney's Fees. Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing
(continued...)

Cir. 2002). The term "costs" as used in Rule 54 includes the specific items enumerated in 28 U.S.C. § 1920. *Whitfield v. Scully*, 241 F.3d 264, 269 (2d Cir. 2001) (citations omitted); *see* 28 U.S.C. § 1920.[9] Witness fees and travel expenses authorized by 28 U.S.C. § 1821 are taxable under Rule 54(d) and Section 1920(3) if the witness testifies. *Palm Bay Intern., Inc. v. Marchesi Di Barolo S.P.A.*, 285 F.R.D. 225, 229 (E.D.N.Y. 2012). These fees and expenses include a $40.00/day witness fee (§1821(b)), and a mileage allowance prescribed by the Administrator of General Services (§1821(c)(2)).

There can be no dispute that the defendants were the prevailing parties in this action. The defendants seek costs in the total amount of $988.52, which is the combination of the transcript cost for Dizak's deposition ($614.62), fees for the defendants' trial witnesses ($222.14), and fees for exemplification and copies of papers necessarily obtained for use in the case ($151.76). *See* Dkt. No. 229. Each is a specific item enumerated in § 1920, and the defendants have provided documentation supporting their sought-after costs. *See* Dkt. Nos. 229-1 - 229-5. Thus, the defendants are presumptively entitled to these costs under

---

[8](...continued)
  party.

[9]Section 1920 provides that:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. §1920.

16

Rule 54. *See Natural Organics, Inc. v. Nutraceutical Corp.*, 2009 WL 2424188, at *2 (S.D.N.Y. Aug. 6, 2009)("After the prevailing party demonstrates the amount of its costs and that they fall within an allowable category of taxable costs, that party enjoys a presumption that its costs will be awarded.")(quotation marks and citations omitted). Despite this presumption, the Court can deny the taxation of costs if Dizak meets his burden of demonstrating that some or all of the costs should not be taxed. *See Whitfield*, 241 F.3d at 270 ("[B]ecause Rule 54(d) allows costs 'as of course,' such an award against the losing party is the normal rule obtaining in civil litigation, not an exception. For this reason, the losing party has the burden to show that costs should not be imposed.")(citations omitted).

In opposition to the taxation of the defendants' witness costs, Dizak asserts that Attorney Fenlon advised him in an October 12, 2018 letter that if he lost at trial, "the State would incur all expenses in connection with my attendance, defendants and witnesses." Dkt. No. 239. As explained above, Attorney Fenlon's letter to Plaintiff did not state that the State would decline to seek the taxation of appropriate costs if the defendants prevailed at trial, but only that the State would incur costs if the matter proceeded to trial. Even assuming that Attorney Fenlon's letter could be interpreted as a statement that the defendants would not seek the taxation of witness costs if they prevailed, such inaccurate advice does not negate the defendants' right to seek taxation of appropriate costs.

Here, the defendants seek appropriate witness fees and travel expenses for three witnesses called to testify at trial. *See* Dkt. No. 229, at 3. The defendants have satisfied their burden of establishing that the costs of their non-party witnesses' attendances at trial are justified, *see John and Kathryn G. v. Board of Ed. of Mt. Vernon Public Schools*, 891 F. Supp. 122, 123 (S.D.N.Y.1995)(When a party challenges the taxation of costs, "the burden

is on the prevailing party to establish to the court's satisfaction that the taxation of costs is justified."), and Plaintiff's citation to his attorney's letter fails to satisfy his burden of demonstrating that these costs should not be imposed. Whether Dizak would have settled the case if he was aware that he could be subjected to these costs, as he asserts, is of no moment. His post hoc rationale, advanced after the jury's verdict, is an insufficient basis to oppose the defendants' application for taxation of witness costs.

Plaintiff also argues that his lawsuit was not frivolous, that the defendants' application for costs is retaliatory, and discourages "future 1983 inmate lawsuits as well as grievances against corrections staff." Dkt. No. 239. The assessment of costs under Rule 54 is not triggered only when a lawsuit is frivolous, so Plaintiff's argument that his lawsuit was not frivolous provides no relief. Similarly, an application for costs under Rule 54 is not retaliatory in that "an award against the losing party is the normal rule obtaining in civil litigation, not an exception." *Whitfield*, 241 F.3d at 270. Nevertheless, a district court has authority to review, adjust, or deny an award of costs based on "the sound discretion of the district court." *Cosgrove v. Sears, Roebuck, & Co.*, 191 F.3d 98, 102 (2d Cir.1999) (quotation marks and citation omitted). A court's decision to adjust or deny costs depends on a number of equitable factors, including "the losing party's limited financial resources." *Whitfield*, 241 F.3d at 269. A court is permitted to "deny costs on account of a losing party's indigency, but indigency *per se* does not automatically preclude an award of costs." *Id.* A party's "meager financial resources and . . . good faith prosecution of claims," can be factors in a court's exercise of discretion that may lead a court to deny costs, although these factors are not dispositive. *Moore v. County of Del.*, 586 F.3d 218, 221-222 (2d Cir. 2009). Further, "[p]ublic policy considerations militate against allowing costs to be exacted as an

'undue barrier to litigation.'" *Furman v. Cirrito*, 782 F.2d 353, 354 (2d Cir. 1986) (citing *Larchmont Engineering, Inc. v. Toggenburg Ski Center, Inc.*, 444 F.2d 490, 491 (2d Cir. 1971)).

Although Plaintiff has not specifically raised the issue of his indigency, the Court recognizes that he was granted *in forma pauperis* status in this action and remains incarcerated. Further, Plaintiff clearly prosecuted his claims in good faith. Dizak's apparent indigency and good faith prosecution of his claims are equitable factors that weigh against taxing Dizak with the cost of his deposition ($614.62) and the defendants' fees for exemplification and copies of papers ($151.76). In addition, requiring Dizak to pay $766.38 for these expenses on top of $222.14 for the defendants' witnesses costs appears to impose an undue barrier to any future litigation Dizak may seek to prosecute in good faith.[10] In the exercise of its discretion, the Court will disallow the cost of Plaintiff's deposition and the fees for exemplification and copies of papers obtained for use in the case. In reaching this conclusion, the Court notes that both Defendants were accused of conduct occurring within the scope of their official duties as DOCCS officers, and were represented by the New York State Attorney General's Office throughout his matter. This is not a case where denying the defendants' application for taxation of these costs will shift the burden to a private individual. Accordingly, the defendants' application for the taxation of the transcript cost for Dizak's deposition and fees for exemplification and copies of papers necessarily obtained for use in the case is denied.

---

[10] The Court notes that the Northern District's docket indicates that this is the only civil rights action Dizak has brought in this District, thus he is a not a frequent or repetitive litigator.

19

## IV. CONCLUSION

For the reasons discussed above, Dizak's motion for a new trial, Dkt. No. 243, is **DENIED**. The defendants' application for taxation of costs, Dkt. No. 229, is **GRANTED IN PART and DENIED IN PART**. The application is granted to the extent that the fees for the defendants' non-party witnesses' attendances at trial, $222.14, is taxed against Dizak. The application for taxation of costs is denied in all other respects.

**IT IS SO ORDERED.**

Dated: January 13, 2020

Thomas J. McAvoy
Senior, U.S. District Judge